In re Streiff, 119 Wis. 566.

## IN RE STREIFF.

*October 23—November 17, 1903.*

*Guardians: Appointment: Statute construed: Mental incompetency: Evidence.*

1. The power to appoint a guardian for an adult person depends upon the statute, and unless the requisites thereof are shown to exist the court cannot act favorably in the matter, though satisfied that the subject for whom the guardian is sought is not capable of caring for his property judiciously.
2. It is not essential to the appointment of a guardian in the case above suggested, that the person be held to be either insane or an imbecile in the technical sense of those terms.
3. In statutory requisites for the appointment of a guardian for an adult person, insanity is one cause and mental incompetency by reason of old age or other cause, to have the charge and management of property, another.
4. Mental incompetency to have the care and management of property, within the meaning of the statute, means mental incapability in that regard.
5. The mental incapability above mentioned should be substantially total. That is, it should be equivalent, substantially, to insanity or imbecility as regards ability to manage and care for property, it being recognized, however, that such condition may exist and the sufferer be neither an idiot nor insane.
6. In an application for the appointment of a guardian for a very old person, proof that such person is so mentally and physically infirm as to have no effective physical and will power to care for himself; that he is dependent daily upon the attention of others who reside with him in his own home; that such others not only do not render proper attention, but so conduct themselves as to intensify the sufferer's condition; that such sufferer is not physically or mentally able to either protect himself where situated or emancipate himself therefrom; that his condition is such as to render him susceptible to undue influence in respect to parting with his property; and that such influence has been used by the persons having opportunity in that regard, resulting in his parting with his property to them without consideration—are all material evidentiary facts bearing on the ultimate issue to be solved.

   [Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Milwaukee county: E. B. BELDEN, Judge. *Affirmed.*

The appeal is from a judgment in proceedings for the appointment of a guardian. The cause was tried in the circuit court on appeal from the decision of the county court granting the prayer of the petitioner. The nature of the proceedings, the issues involved, and the evidentiary facts deemed by the court sufficient to warrant the appointment of a guardian for the alleged incompetent, are indicated by the findings, which are in substance as follows:

(1) *Martha Streiff,* the alleged incompetent, is about eighty-five years of age.

(2) She has property in the city of Milwaukee upon which she resides, of the value of about $9,000, which she has owned about thirty-eight years.

(3) Her heirs at law are Henry Streiff, her son, and *Emma* and Albert Fink, her grandchildren.

(4) Her son is a man of weak mind. His family consists of a wife, Agnes Streiff, and two children. During the married life of Henry and Agnes, covering a period of about twenty years, they have resided with *Martha* upon her property and have been mostly supported by the income therefrom. They have done nothing whatever to contribute to the support of *Martha,* or paid her anything for the use of her property.

(5) The said grandchildren, for twenty years, have been accustomed to visit *Martha* and pay her loving attention. Recently they have been prohibited by Henry's wife from seeing her.

(6) Henry's wife is a strong-minded woman of violent temper. She has been accustomed to use abusive language to *Martha* and to otherwise illtreat her, keeping her in a state of fear and subjection, and causing her, for a long period of time, much suffering. Such illtreatment has increased in

severity since June 26, 1901, the time when Henry and his wife acquired, without consideration, all of *Martha's* property as hereafter stated.

(7) *Martha* is weak in mind and physically infirm. Her physical infirmities render her incapable of leaving her home. She has been blind for a considerable period of time. She is now living in a state of fear, and under the subjection, of Henry's wife.

(8) June 26, 1901, at the request of Henry's wife, and without consideration except the nominal one of a dollar, she transferred all her property to the former and her husband, leaving herself wholly dependent upon their pleasure for support.

(9) She is mentally incompetent to have the charge and management of her property, and incapable of taking care of herself.

The conclusion of law from the foregoing was that the petition for the appointment of a guardian for *Martha* was properly granted by the county court, and that judgment to that effect should be rendered. A judgment of affirmance was accordingly entered, from which this appeal was taken.

For the appellant there was a brief by *Nath. Pereles & Sons,* and oral argument by *G. D. Goff.* To the point that mere mental weakness will not justify the appointment of a guardian, they cited *Armstrong v. Short,* 1 Hawks (N. C.) 11; *Ex parte Cranmer,* 12 Ves. Jr. 445; *In re Holmes,* 4 Russ. 182; *Comm. v. Reeves,* 140 Pa. St. 258; *In re Collins,* 18 N. J. Eq. 253; *Schick v. Stuhr* (Iowa) 94 N. W. 915.

For the respondent there was a brief by *Kronshage & McGovern,* attorneys, and *W. S. Frazier,* of counsel, and oral argument by *F. E. McGovern* and *W. S. Frazier.*

MARSHALL, J. The main contentions of appellant's counsel are, that the evidence introduced, of which there was much, as to undue influence by Henry Streiff and his wife

to obtain from appellant the deed of her property, and the evidence showing illtreatment of appellant, was incompetent; that such evidence had no bearing on the real subject for investigation,—the mental competency of Martha to have the charge and management of her property; that the findings of fact based specifically thereon are immaterial to the real subject of inquiry and should not and would not have been made but for the admission of such incompetent evidence; and that such findings were the real basis for the ultimate conclusion of fact that *Martha Streiff* was mentally incompetent as alleged in the petition.

We are unable to agree with counsel. That *Martha Streiff*, by reason of mental weakness produced by old age and her infirmities, required tender care from others at all times; that those with whom she resided, because of her broken-down condition, were able to keep her in a state of subjection to their will; that they exercised their power in that regard; that they kept her relatives from her and illtreated her in many ways; that she was too weak and infirm to protect herself therefrom; that they obtained from her all of her property without consideration and then increased the severity of their treatment; and that she was mentally and physically powerless to resist such treatment or to escape from it,—bore very strongly upon the ultimate issue of fact to be solved,—whether she was, by reason of extreme old age or other cause, mentally incompetent to have the charge and management of her property. Sec. 3976, Stats. 1898. Certainly, evidence showing that she was incapable of protecting herself in any way from the abuse of others in her own home, and that she was controlled by the will of others in giving them all her property, leaving her without any means of support in her old age, there being nothing in the conduct of such others that would influence one so circumstanced, capable of acting with any degree of prudence, to rely upon mere moral obligations to secure in return for the property some reasonable equiva-

lent in care and attention, may well be viewed, as the trial court evidently deemed the same, as strongly indicating mental incompetence to have the charge and management of her property.

True, as suggested by appellant's counsel, the power to appoint a guardian in the circumstances of this case depends upon the statute. Unless the statutory conditions requisite to the exercise of such power are shown to exist by the evidence the court is powerless to act, however clear it may appear by proof that the subject for whom a guardian is sought is not capable of caring for his property judiciously. But such conditions do not call for imbecility or insanity in a technical sense. It is sufficient if the subject is as incapable of managing his affairs as if he were insane. That is plain. Our statute should not be confused with those which are worded differently, and the decisions under the same. The term "mentally incompetent to have the charge and management of his property" means mental incapability to do so. *In re Leonard's Estate,* 95 Mich. 295, 54 N. W. 1082. True, the incapability must be, as before indicated, substantially total, as in case of imbecility or insanity; not that partial incapability often seen in persons so intellectually weak that they are capable of managing their affairs with very little judgment. Nevertheless, the subject need not be necessarily classed as either insane or an idiot in the ordinary meaning of those terms. Counsel cite *In re Storick,* 64 Mich. 685, 31 N. W. 582, construing the Michigan statute, which is like our own, as holding that it calls for insanity or imbecility. The language of the court in that case is, "insanity or mental infirmity that is equivalent in destroying mental competency." By that it is seen that the court viewed mental incompetency from any cause rendering a person as incapable of managing his property as if he were insane, covered by the statute. In short, that mental incapability of one to manage his property, as distinguished from insanity in the ordi-

nary sense, gives the court jurisdiction to appoint a guardian, as held in the later case. *In re Leonard's Estate, supra.*

In the earlier decisions of courts, particularly the English decisions, the mooted question was whether a court of chancery possessed jurisdiction to appoint a guardian of a person in the absence of a finding that such person was insane or an idiot. A good review of such cases is contained in the opinion in *In re Barker,* 2 Johns. Ch. 232. The position finally taken by the English courts and the one which the New York court adopted is indicated in the following, quoted from the chancellor's opinion:

"Lord ELDON, in *Ridgeway v. Darwin,* 8 Ves. Jr. 65, observed that in Lord HARDWICKE's time commissions of lunacy were not granted to the extent in which they have been since granted. That when he came into the court, he found a course of cases establishing its authority where the party was not absolutely insane, but was unable to act with any proper and provident management, and was liable to be robbed by any one, under that imbecility of mind, calling for as much protection as absolute insanity. When the mind was worn out by years, or epilepsy, or habitual intoxication, etc., the party required that care should be thrown around him."

That view is embodied in many, we may say most, of the modern statutes. The words "lunacy" and "unsound mind" have been bent out of their technical sense in some instances, a legislative construction being given thereto in harmony with the broad views of courts to which we have alluded, that they include every phase of unsound mind rendering one incapable of caring for himself or his property (1 Birdseye's Rev. Stats. N. Y. 1889, p. 512); that it includes mental unsoundness rendering the sufferer incapable of managing his property (Rev. Stats. Mo. 1899, sec. 3702). In many statutes, of which that of Michigan and our own are instances, the term "insanity," considered in its technical sense, is separated from its equivalent as regards the ability of the sufferer to care for himself or his property, leaving no ground

to claim that mental unsoundness, meaning insanity strictly so called, is essential to the appointment of a guardian. The statute provides for the guardianship of insane persons and any others who, "by reason of extreme old age or other cause, are mentally incompetent [that is, incapable] to have the charge and management of their property."

True, the evidence in this case does not show that *Martha Streiff* was insane or an imbecile in the technical sense of those terms; but it pretty clearly shows that she might as well be either the one or the other as regards capability to have the charge and management of her property. That satisfies, clearly, the very letter of the statute. The evidentiary facts found, which are well supported by the proof, show, as before indicated, that appellant was so weak of mind as to submit to the will of others to the extent of parting with all she possessed without making any provision whatever for her future support, notwithstanding her utterly helpless condition. It shows that she had neither will power to assert her rights in her own home, nor to disassociate herself from her surroundings and obtain the assistance and care of others. It shows that she was in her second childhood, and in nearly the last and most helpless stage thereof. It shows that she was as much in need of care and protection as an infant, and that those under whose control she was living neither extended that care to her nor permitted others to do so or to comfort her in any way, but took advantage of her weakness and their relations to her to practically rob her. That is what the evidence strongly tends to prove. It is what the court found in effect. If the court has not power under our statute to rescue an old person from such a situation, it is a severe criticism upon the wisdom of the lawmaking power; but there has been no legislative neglect in that regard, as we have seen, in that the statute expressly provides for just such cases as this,—for persons who, from extreme old age or other cause, are mentally incompetent to manage their property. Thus

has become written law the reasoning of courts of which that found in *Ridgeway v. Darwin,* 8 Ves. Jr. 65, is a fair type, where the chancellor said, in effect: The question is not necessarily whether the person is absolutely insane; it is sufficient if he is unable to act with any proper and provident management, and is liable to be robbed by any one, calling for as much protection as absolute insanity. And that in *Ex parte Cranmer,* 12 Ves. Jr. 445, where Lord ERSKINE said, that it is unseemly that a person whose faculties have become so decayed by old age that he is unfit to govern himself or his affairs, cannot have the protection of a guardian except that he be put upon the footing of a lunatic. Why should not a man be entitled to protection in his second state of infancy as well as the first?

*By the Court.*—The judgment is affirmed.