GUARDIANSHIP OF NELSON: BRYN, Administrator, Appellant, v. THOMPSON, Guardian, Respondent.

*September 5—October 1, 1963.*

26

For the appellant there were briefs by *Hale, Skemp, Hanson, Schnurrer & Skemp* of La Crosse, and oral argument by *T. H. Skemp*.

For the respondent there was a brief and oral argument by *Burr Tarrant* of Whitehall.

WILKIE, J.   The principal issue to be decided on this appeal is whether, in a proceeding under sec. 319.27, Stats., to settle the final account of a guardian, an interested party may challenge collaterally the jurisdiction of the court that made the initial guardianship appointment, and whether such interested party may also challenge collaterally the sufficiency of the evidence supporting the finding of incompetency in the initial proceeding leading to the appointment of the guardian.

Ch. 319, Stats., entitled "Guardians and Wards" is wholly a product of legislative action.   While there are no express provisions in ch. 319 relating to the scope of collateral review of a guardianship appointment, it is reasonable to believe that the legislature intended that neither the jurisdiction of the court making the original appointment, nor the sufficiency of the evidence justifying such an appointment could be reviewed during a final proceeding under sec. 319.27, Stats.   To reach this conclusion we must strike a proper balance between two competing interests.   On the one hand, this court is well aware of the significance of a determination that a man is incompetent and that the management of his affairs must be turned over to another person.

" 'Only with great hesitation should courts, by the appointment of a guardian, interfere with the discretion of elderly people, owing no legal duty of support to any one, in devoting the property accumulated by them to their comfort according to their own tastes.' *In re Guardianship of Welch,* 108 Wis. 387, 390, 84 N. W. 550." [1]

To determine that a man is incompetent and that a guardian should be appointed is as difficult a judgment as a judge is called upon to make. Therefore, to mitigate the chances of error, the legislature has spelled out detailed jurisdictional requirements which must be observed. The allegations of the petition, required by sec. 319.07, Stats., must be present on the face of the document, if the court is to have jurisdiction to proceed to an appointment. Moreover, the requirement of sec. 319.08 (1), that the "court shall cause the proposed incompetent, if able to attend, to be produced at the hearing" places upon the court an affirmative burden to produce the person unless such appearance is wholly impossible because of the proposed incompetent's disordered condition. Failure to take such affirmative steps will deprive the court of a jurisdiction to make a determination of incompetency. [2]

On the other hand, the guardian also has an affirmative duty to manage the ward's estate in his best interests. Sec. 319.19 (1), Stats., provides, "It is the duty of the guardian of the estate to protect and preserve it, to retain, sell and invest it . . .". If the validity of the guardian's appointment were open to collateral attack at the time of final accounting, it might well be impossible for him to discharge this duty of intelligent management under sec. 319.19. A prospective purchaser of the ward's real or personal proper-

[1] *Guardianship of Warner* (1939), 232 Wis. 467, 473, 287 N. W. 803.
[2] *Guardianship of Simmons* (1940), 236 Wis. 305, 294 N. W. 821.

ty might be hesitant to execute a sale if he knew that subsequent litigation might be necessary to establish him as a *bona fide* purchaser for value. As long as an interested party could at any time challenge the validity of the guardian's appointment, the uncertainties relating to the transfer of title of the ward's estate created by this situation would make intelligent, prudent management impossible. This is not to say that the original determination of incompetency is not open to review. In addition to a direct appeal of the initial order, any interested party at any time during the guardianship may petition for a rehearing seeking revocation of the guardian-ward status.[3] At this rehearing an attack may be made both upon the jurisdiction of the court making initial appointment and upon the sufficiency of the evidence supporting a finding of incompetency.[4]

Therefore, because there is ample opportunity to consider the wisdom of the appointment of a guardian and the jurisdictional prerequisite of the appointing court's order establishing the guardianship and appointing the guardian, prior to the final accounting, and because permitting collateral attack upon the appointment at the late stage of final accounting would make management of the estate difficult, we believe that the legislature intended that the only question reviewable in a proceeding to settle the final account is, Did the guardian loyally discharge his position of trust (assuming arithmetic correctness and reasonableness of each item)? At this terminal stage of the guardianship relationship the county court must accept without question the validity of the original appointment. Consequently, the appellant's jurisdictional attacks upon the validity of the original appointment and his attack predicated upon the

---

[3] "319.08 (4) *Rehearings.* Notice of a rehearing to determine if a ward is a proper subject to continue under guardianship shall be given as required for the appointment of a guardian."

[4] *Guardianship of Warner, supra,* pp. 468–473.

insufficiency of the evidence to support the finding of incompetency cannot be reviewed at this time.

We must note, however, that had the original appointment been appealed directly, or had it been challenged by a motion to revoke the guardianship, on this record this court would have concluded that the county court lacked jurisdiction to establish a guardianship for Nelson. As mentioned above, *Guardianship of Simmons* requires the county court to take affirmative steps to ensure the incompetent's physical presence in the courtroom during the hearing. The record reveals that Emil Nelson was not present during the original guardianship proceeding. No evidence was produced of affirmative action on the part of the trial court to discover reasons for such absence. This failure to take adequate steps to ensure Nelson's presence in the courtroom if at all possible, was error, but such error could not be raised in the collateral attack on the original appointment attempted here during this proceeding on the final account. Sec. 319.11, Stats., provides for the appointment of a guardian *ad litem* for an alleged incompetent in a guardianship proceeding.[5] We commend the practice of appointing a guardian *ad litem* under this section where it is deemed, by the trial court, to be in the best interests of the ward and we especially recommend such an appointment where an alleged incompetent is unable to be present at the guardianship proceedings.

The appellant's other jurisdictional claim, that the guardianship appointment was invalid because all interested heirs were not notified, is without merit even if properly reviewable. Sec. 319.07 (8), Stats., provides:

---

[5] "319.11 GUARDIAN AD LITEM. At any time during the proceeding the court may appoint a guardian ad litem for the ward or proposed ward. If the court is satisfied that the estate of such person is unable to compensate the guardian ad litem for his services and expenses the court shall order his fees and expenses paid as provided in s. 957.26."

"319.07 PETITION. Any relative, public official or other person, may petition for the appointment of a guardian of a person subject to guardianship. *Such petition shall state, so far as may be known:*

"(8) The names and post-office addresses of the spouse and presumptive or apparent adult heirs of the proposed ward, and all other persons believed by the petitioner to be interested." (Emphasis added.)

This provision means simply that if the petitioner knowingly fails to submit names of interested relatives to the court, the court is without jurisdiction to proceed to a final determination.[6] However, Thompson testified that at the time he submitted the original petition, he only knew of one interested heir. The trial court accepted this testimony as true. Because matters of credibility are solely within the province of the trial court, we cannot disturb this finding. Therefore, on its face, the petition complied with the provisions of sec. 319.07, Stats.

The appointment of the guardian not being subject to collateral attack, the remaining issue for us to resolve on this appeal is whether this court may review a determination by a county court conducting a hearing on the settlement of the final account, that it was in the best interests of the ward, Nelson, to reside in the Thompson home.

The record reveals that at the time Emil Nelson was declared incompetent he was living in a rest home operated by the Seventh-Day Adventist Church. Upon being appointed guardian, Martin Thompson took steps to take Nelson to his home. Nelson resisted this move strongly and made it clear on a number of occasions that he did not care to live with Thompson. The appellant contends that by insisting upon having Nelson stay with him, regardless of the ward's wishes, Thompson exceeded his authority as a guardian and is therefore not entitled to reimbursement for the expenses he incurred while Nelson was in his home.

---

[6] *Ziegler v. Bark* (1904), 121 Wis. 533, 99 N. W. 224.

The determination of whether in this situation the guardian acted loyally in the best interests of his ward is a factual question that was clearly within the province of the county court to resolve.[7] Since that court determined that Thompson did not violate his position of trust in keeping Nelson in his home, we cannot disturb this finding.

*By the Court.*—Orders affirmed.

---

[7] *Will of Mechler* (1944), 246 Wis. 45, 16 N. W. (2d) 373.