IN the MATTER OF the GUARDIANSHIP AND PROTECTIVE
PLACEMENT OF CARL F. S.:

CARLA S., Appellant,

v.

FRANK B., Respondent.

Court of Appeals

*No. 99–3012.  Submitted on briefs November 7, 2000.—Decided
March 1, 2001..*

2001 WI App 97

(Also reported in 626 N.W.2d 330.)

On behalf of the appellant, the cause was submitted on the briefs of *Richard P. Carr* of *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.* of Milwaukee.

On behalf of the respondent, the cause was submitted on the brief of *Mark C. Skolos* of *Laabs, Skolos & Millis, LLP* of Black River Falls.

Before Dykman, P.J., Deininger and Leineweber, JJ.[1]

¶ 1. DYKMAN, P.J.   Carla S., Carl S.'s daughter, appeals from an order authorizing her father's guardian to terminate Carl's life lease of his home. She complains of a lack of due process in the guardianship hearing, that the trial court's reasons for its order were insufficient, and that the trial court failed to consider other alternatives for the property other than termination of the life lease. The guardian contests Carla's substantive assertions and asserts that she does not have standing to bring this appeal. We conclude that Carla does have standing, both in the trial court and on appeal, and that the trial court erred by failing to consider other alternatives to terminating Carl's life lease agreement. We therefore reverse and remand for further proceedings.

¶ 2.   In 1991, Carl and his wife, Genevieve, deeded their home to three of their children and a grandchild. The deed was contemporaneous with a lease, in which Carl and Genevieve leased the home for

---

[1] Circuit Judge Edward E. Leineweber is sitting by special assignment pursuant to the Judicial Exchange Program.

one dollar per year plus taxes, insurance, utilities, and repairs. The lease was for Carl and Genevieve's lifetimes, and provided that they could assign or sublease the property without the consent of their landlords.

¶ 3. Genevieve died in 1993, and Carl continued living in the home until 1997, when he suffered a stroke requiring hospitalization, nursing home care, and ultimately, a guardianship. In 1999, Carl's guardian petitioned the circuit court for an order authorizing the "termination of the Ward's interest in a certain lease." The reason the guardian gave for wanting this disposition was that Carl did not reside at the premises, and the guardian was obligated to pay real estate taxes and insurance on the property. Although the guardian cited WIS. STAT. § 880.19 (1997–1998)[2] as authority for his petition, he did not explain why a gift was contemplated, when § 880.19 authorizes only sales, mortgages, pledges, leases, or exchanges.

¶ 4. Before addressing the merits of Carla's appeal, we must consider the guardian's argument that Carla lacks standing to bring this appeal. He does not dispute that Carla had standing in the trial court, but asserts that on appeal she does not. At the hearing on the guardian's petition, the court questioned Carla's standing to contest the petition. The court ultimately concluded that Carla had standing after Carla's attorney pointed out that she was an "interested person," defined in WIS. STAT. § 880.01(6) as an adult relative of the ward. The court then heard evidence from the guardian, who testified that he was paying taxes and other costs associated with the home, but had never tried to rent the home. Carla testified that Carl wanted to return home, with skilled nursing care, whereas if

---

[2] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

the home were sold, that would not be possible. The trial court did not address the possibility of renting or selling Carl's interest in the home instead of gifting it to some of Carl's children and his grandchild, and concluded that the expense of maintaining the home when it was of no value to Carl was inappropriate. It granted the guardian's petition. Carla appeals.

■

¶ 5.  Whether a person has standing to participate in an action or proceeding is a question of law that we review de novo. *Wisconsin Hosp. Ass'n v. Natural Res. Bd.*, 156 Wis. 2d 688, 700, 457 N.W.2d 879 (Ct. App. 1990). Standing is not a question of jurisdiction, but of sound judicial policy. *Wisconsin Bankers Ass'n v. Mutual Sav. & Loan Ass'n*, 96 Wis. 2d 438, 444 n.1, 291 N.W.2d 869 (1980). The law of standing is complex and depends in large measure on the type of claim asserted. *State ex rel. Parker v. Sullivan*, 184 Wis. 2d 668, 678 n.6, 517 N.W.2d 449 (1994). The purpose of the requirement of standing is to ensure that a concrete case informs the court of the consequences of its decision and that people who are directly concerned and are truly adverse will genuinely present opposing petitions to the court. *Id.* The law of standing should not be construed narrowly or restrictively. *State v. Iglesias*, 185 Wis. 2d 117, 132, 517 N.W.2d 175 (1994). A party has standing when its claims are no more than a "trifle." *State ex rel. First Nat'l Bank v. M & I Peoples Bank*, 95 Wis. 2d 303, 309, 290 N.W.2d 321 (1980). Under Wisconsin's law of standing, we must determine whether the party seeking standing was injured in fact, and whether the interest allegedly injured is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.

*Mogilka v. Jeka*, 131 Wis. 2d 459, 467, 389 N.W.2d 359 (Ct. App. 1986).

¶ 6. The guardian has cited no authority holding that a party who has standing in the trial court can nonetheless lack standing on appeal. "Standing" is often referred to as "standing to sue," a trial court concept. *See, e.g., Sandroni v. Waukesha County Bd.*, 173 Wis. 2d 183, 186, 496 N.W.2d 164 (Ct. App. 1992). Logic suggests that a litigant who has standing in a trial court would ordinarily have standing on appeal. There is an appellate requirement that the right to appeal is limited to persons "aggrieved" by a final judgment or order. *Ford Motor Credit Co. v. Mills*, 142 Wis. 2d 215, 217, 418 N.W.2d 14 (Ct. App. 1987). A person may be an aggrieved party entitled to appeal from a judgment even though he or she is not a named party to the suit if he or she has a substantial interest adverse to the judgment either directly or by privity. *Id.* at 218. It would be strange indeed if a person who has been recognized by the legislature as an "interested person" and whose standing has been recognized by the trial court, would nonetheless lack standing to appeal the very determination for which he or she had standing in the trial court. And, as we will next explain, interested persons have been judicially recognized as having standing in appellate courts.

¶ 7. WISCONSIN STAT. § 319.08 (1961), a predecessor to WIS. STAT. § 880.08, required only that notice of a guardian appointment proceeding be given to the proposed ward or his or her custodian, the proposed ward's presumptive or apparent heirs, and to such other persons as the court ordered. Nonetheless, in a case where an interested person sought unsuccessfully to collaterally attack a guardian's appointment, the court concluded: "This is not to say that the original determi-

nation of incompetency is not open to review. *In addition to a direct appeal of the initial order*, any interested party at any time during the guardianship may petition for a rehearing seeking revocation of the guardian-ward status." *Bryn v. Thompson*, 21 Wis. 2d 24, 27, 29, 123 N.W.2d 505 (1963) (emphasis added). We thus know that under § 319.08, the language of which gives even less protection to interested parties than § 880.08, an interested party had standing to appeal from a decision granting or denying a guardianship. And this holding was affirmed in *Coston v. Joseph P.*, 222 Wis. 2d 1, 11–22, 586 N.W.2d 52 (Ct. App. 1998). In *Coston*, we addressed the issues raised by interested parties, and affirmed the trial court. *Id.* at 4–5, 11. Had we concluded in *Coston* that the appellants lacked standing, we would have dismissed the appeal.

¶ 8. There is little difference between WIS. STAT. § 880.08 and WIS. STAT. § 880.19(5) in their treatment of interested persons. Section 880.19(5) permits an interested person to petition the court for an order authorizing the guardian to sell a ward's property. Section 880.08 provides that an interested person may, under some circumstances, request a hearing at a place where the proposed ward may attend. But there is no mention in either statute of the right of an interested person to participate in the hearing, nor a directive that he or she may not. Neither statute specifically addresses whether Carla has standing. And this is unremarkable. Fewer than a dozen statutes address standing.[3] Standing, therefore, is most commonly discussed as a common law concept.

---

[3] For example, WIS. STAT. § 184.07 gives nonprofit associations standing under some circumstances. And WIS. STAT. § 867.02(2) gives certain persons standing to petition for sum-

¶ 9.  Interested persons are not explicitly given participation rights by the language of WIS. STAT. § 880.08. And yet, we know that under *Bryn*, an interested person has standing to appeal an order issued pursuant to § 880.08. WISCONSIN STAT. § 880.19 is identical in its treatment of interested persons. The guardian does not explain why an interested person has standing to appeal an order issued pursuant to § 880.08 but not one issued pursuant to § 880.19. *Bryn* is persuasive authority that the opposite is true.

¶ 10.  The guardian relies upon *Coston*, 222 Wis. 2d at 20–21, to conclude that Carla did not have the right to present and cross-examine witnesses, to demand a trial, to present evidence, or to raise evidentiary objections at the hearing. This is an overreading of *Coston*. While we noted in *Coston*, as we do here, that no statute provided for interested persons to demand a trial, present evidence, or raise evidentiary objections, we also said:

> This is not to conclude, however, that circuit courts are foreclosed from allowing for the participation of interested persons. Depending on the facts and circumstances of a given case, a court could consider such participation to be very helpful, and could exercise discretion to allow interested persons to participate to the extent it would deem appropriate.[4]

mary assignment of an estate. Though few in number, the existence of statutes conferring standing indicates that the legislature is aware of the concept of standing, and could have denied interested persons standing to appeal had it wished to do so.

[4] *Coston v. Joseph P.*, 222 Wis. 2d 1, 20–21, 586 N.W.2d 52 ( Ct. App. 1998), relies upon *R.S. v. Milwaukee County*, 162 Wis.

*Id.* at 21. It is therefore within a trial court's discretion to allow an interested person to participate in a WIS. STAT. ch. 880 guardianship proceeding. And that is what the trial court did here. The court could see no reason why Carla should be excluded from the motion hearing. And indeed, there was no reason. If Carla had been prohibited from asserting her view, the argument she wished to make would have been made by no one. And that is often true in guardianship proceedings. Without an interested party's ability to protest a guardian's gift of a ward's property, often there would be no check on a guardian's failure to follow the law.

---

2d 197, 209, 470 N.W.2d 260 (1991), for its conclusion that "only the proposed ward, the guardian ad litem, and advocacy counsel for the proposed ward have the right to present and cross-examine witnesses." We question whether *R.S.* supports this proposition. *R.S.* involved a dispute between a proposed ward and Milwaukee County, a guardianship petitioner. *R.S.*, 162 Wis. 2d at 199–200. There were no other interested parties involved in *R.S.*, and the dispute there concerned whether the petitioner or the proposed ward had the burden of providing the testimony of the physician whose report formed the basis for the petition. *Id.* at 199, 208. In that context the supreme court said: "We conclude that a more logical reading of sec. 880.33(2)(a)1 is that the proposed ward, attorney or guardian ad litem has the right to present evidence and to cross-examine witnesses, including the physician or psychologist reporting to the court." *Id.* at 208. The court then concluded that WIS. STAT. § 880.33 required the petitioner to produce the professional whose report formed the basis of the petition. *Id.* This conclusion, in the context of *R.S.*, would not appear to support the proposition that *only* the proposed ward, the guardian ad litem, or advocacy counsel has the right to present and cross-examine witnesses. Because a proposed ward, a proposed guardian, or advocacy counsel has certain rights does not mean that others do not also have those rights.

And as we have explained, *Bryn* and *Coston* hold that an interested person has standing to appeal from a ch. 880 order appointing a guardian. The statutory rights given to an interested party are similar whether we consider a WIS. STAT. § 880.08 guardianship petition or a WIS. STAT. § 880.19(5) petition to transfer a ward's property. We conclude that Carla has standing to appeal the trial court's order permitting the guardian to terminate Carl's lease.

¶ 11.   We turn to the substantive issues. Carla asserts that the trial court failed to consider alternatives to terminating Carl's lease. An alternative that Carla suggested was that Carl should return home and save nursing home costs by using home care providers. On appeal, Carla argues that the trial court also should have considered renting Carl's home, thereby preserving it in a financially viable manner. She concludes that making a gift of Carl's property is contrary to Carl's best interests. The guardian does not complain that Carla failed to raise this issue in the trial court, but instead addresses Carla's issue on the merits. He claims that "the basis for allowing a Guardian to transfer the real property of a ward is clearly set forth in the Wisconsin Statutes," and that the transfer of the property was not a "gift" in the traditional or legal sense of the word. Because the parties have briefed the issue of a guardian's authority to make a gift of the ward's property, we will consider it. *See Beard v. Lee Enterprises, Inc.*, 225 Wis. 2d 1, 17, 591 N.W.2d 156 (1999).

¶ 12.   The guardian admitted that he had never tried to rent Carl's house to provide income for the guardianship estate. Common sense tells us that the opportunity to rent or sell a home for one dollar per year plus an amount equaling taxes, insurance, utilities, and upkeep is something of considerable value.

Tenants almost always pay far more than that. The guardian does not tell us how his decision to gift Carl's property will benefit Carl, except to say that he did so to preserve the assets of Carl's estate. But that begs the question of whether there was a better alternative to gifting Carl's property.

¶ 13. While we agree with the guardian that WIS. STAT. § 880.19(5) provides for the "transfer" of a ward's property, that statute does not mention gifts as a method of transfer. Section 880.19(5) permits a guardian to "sell, mortgage, pledge, lease or exchange any property of the guardianship estate." Gifts are conspicuously absent from the statutory ways a guardian my transfer a ward's property. And in *V.D.H. v. Circuit Court*, 154 Wis. 2d 576, 584, 453 N.W.2d 882 (1990), the supreme court, in reviewing the powers of a guardian under § 880.19 held:

> The guardian had no authority, however, to exercise any power over the ward's property which was not conferred by statute. Thus, the guardian of the estate could not make a gift of property of the estate on the ward's behalf or exercise on the ward's behalf those property rights denominated as "personal" to the ward . . . .

We do not accept the guardian's assertion that the gift of the life lease was in reality not a gift. The guardian suggests that relieving Carl of the burden of paying real estate taxes, insurance, and maintenance is consideration for the transfer of the property.[5] While that might be true if the property were unrentable or could

---

[5] As a general proposition, there would be few people who would agree that giving their homes to another to avoid the payment of taxes, insurance, and maintenance would be a *quid pro quo.*

not be sold, there is no record support for such conclusions.[6] On remand, the trial court will be able to consider the appropriate disposition of Carl's property after considering the possible alternatives, and their costs.

¶ 14.   We conclude that the trial court erred by not considering alternatives less drastic than a gift of Carl's property to his landlords. Having so concluded, we need not consider Carla's other reasons she believes that we should reverse the trial court's order.

*By   the   Court.*—Order   reversed   and   cause remanded with directions.

¶ 15.   DEININGER, J. (*dissenting*). I conclude that Carla S. lacks standing to bring this appeal, and I therefore dissent.

¶ 16.   In March 1997, the court appointed a guardian for Carl S. and ordered that he be protectively placed. Carl is now ninety years old, has suffered a stroke and other infirmities, and currently resides in a nursing home. In May 1999, his guardian petitioned the court for an order authorizing the guardian to terminate Carl's "life lease" in his former residence. The lease in question had been entered into by Carl and his late wife in 1991, after they deeded their residence to three of their children and a grandchild. Under its terms, Carl paid rent of $1.00 per year and was respon-

---

[6] Sale of Carl's interest would result in an estate *per autre vie*, an estate "for or during a period measured by another's life." BLACK'S LAW DICTIONARY 1156, 1248 (7th ed. 1999). The likely buyers would be Carl's landlords, or someone willing to purchase housing discounted for an uncertain length of tenancy.

sible for all real estate taxes, insurance, utilities, and "any other expenses related to the property," including repairs. The lease was for the joint lives of Carl and his wife. Carl's guardian averred that Carl was "unlikely to return" to the premises and that he was "without the financial wherewithal to make the payments required by the Lease Agreement."

¶ 17.  Carl's daughter, Carla, although not among the persons who were owners/lessors of the property, objected to termination of the lease and petitioned the court "for the recognition of standing . . . regarding the Petition that has been filed by the Guardian." She appeared with counsel at the hearing on the petition. The guardian disputed whether Carla had standing to object to the petition, but the court concluded that there was no "reason why she . . . should not be permitted to have some input into the issue of whether it's appropriate that the life lease be terminated" and ruled that Carla could "participate in the proceedings."

¶ 18.  The guardian testified consistently with his averments in support of the petition. Carla's counsel was permitted to cross-examine the guardian, and Carla testified in opposition to the guardian's request. Her position was that the lease should not be terminated because her father might be able to return to his home if necessary home care could be arranged. The court concluded that medical reports in the record, and past recommendations of Carl's guardian ad litem regarding his placement needs, rendered the possibility of his returning to his home remote at best. The court also credited the guardian's testimony that, financially, it was in Carl's best interest, if not an imperative, that his obligations under the lease be terminated. Accordingly, the court entered an order authorizing the guardian to "take such steps as may be

necessary to terminate" Carl's lease-hold interest in the residence.

¶ 19. A person may not appeal from a judgment unless he or she is aggrieved by it. This means that the judgment must bear directly and injuriously upon his or her interests; the person must be "adversely affected in some appreciable manner." *Ford Motor Credit Co. v. Mills*, 142 Wis. 2d 215, 217–18, 418 N.W.2d 14 (Ct. App. 1987) (citations omitted). It is not necessary for standing in this court that an appellant has been "a named party to the suit," *id.* at 218, and we are to " 'liberally construe the law of standing.' " *Koller v. Liberty Mut. Ins. Co.*, 190 Wis. 2d 263, 266, 526 N.W.2d 799 (Ct. App. 1994) (citation omitted). Nonetheless, "a strong desire to be heard by the court is not enough to establish standing"—a "direct effect" on one's "legally protected interest" is required. *L.P. v. B.G.*, 177 Wis. 2d 424, 427, 501 N.W.2d 908 (Ct. App. 1993). The question presented is one of law. *Id.*

¶ 20. There can be no dispute that Carla is an "interested person" for purposes of the guardianship statutes. *See* WIS. STAT. § 880.01(6) (1999–2000)[1] (" 'Interested person' means any adult relative or friend of a person to be protected under this subchapter . . . ."). We have recently considered in some detail the rights of "interested persons" with respect to guardianship and protective placement proceedings under chapters 880 and 55. *See Coston v. Joseph P.*, 222 Wis. 2d 1, 11–22, 586 N.W.2d 52 (Ct. App. 1998). While we concluded that interested persons "can have important roles" in such proceedings, *id.* at 11, their rights to participate are not unlimited. *Id.* at 13. Specifically, we concluded that "[n]o statute provides for interested

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

persons to demand a trial, present evidence, or raise evidentiary objections in guardianship and protective placement hearings—whether contested or uncontested." *Id*. at 21.

¶ 21. We noted in *Coston*, however, that "circuit courts are [not] foreclosed from allowing for the participation of interested persons" and that a court "could exercise discretion to allow interested persons to participate to the extent it would deem appropriate." *Id*. at 21. The trial court in this case did that very thing at the hearing on the guardian's petition to terminate the lease:

> I don't see any reason why [Carla] . . . should not be permitted to have some input into the issue of whether it's appropriate that the life lease be terminated, and so I'm going to treat her as if she has standing to appear in that proceeding at this time.

The court's discretionary decision to allow Carla's input and participation in the trial court proceedings, however, does not necessarily confer on her the necessary "legally protected" or "substantial" interest in the resulting order that would render her a person "adversely affected in some appreciable manner" by it.

¶ 22. The appellants in *Coston* were a sister and niece of the ward. *Id*. at 4. Their standing to appeal the order which determined Joseph to be incompetent, appointed a guardian of his person and estate, and protectively placed him, was apparently not challenged. We did not address the issue in our opinion.[2]

---

[2] We noted in *Coston* that "interested persons" have a statutory right to petition for the appointment of a guardian and to nominate a guardian. *Coston v. Joseph P.*, 222 Wis. 2d 1, 11, 586 N.W.2d 52 (Ct. App. 1998). This would certainly seem to give an interested person standing to appeal an order denying his or her

The present appeal, however, does not involve an order initially establishing a guardianship, appointing a guardian, or ordering protective placement. The present order is much more limited in scope. It deals only

petition or nomination, and it may be a sufficient basis on which to confer standing on a non-petitioning interested person to appeal an order which appoints a guardian at the request of another.

I also acknowledge the supreme court's comment in *Bryn v. Thompson*, 21 Wis. 2d 24, 29, 123 N.W.2d 505 (1963), on which the majority relies, to the effect that "any interested party" may take "a direct appeal of the initial order" in a guardianship. I note, however, as does the majority, that the case was decided under statutes which preceded the present chapter 880, and further, that the right of any interested person to appeal an initial order appointing a guardian was not at issue in *Bryn*. (The appeal was of the final order approving the guardian's account; it was taken by the administrator of the deceased ward's estate; and the issue was whether the initial order establishing the guardianship could be collaterally attacked in an appeal of the final order terminating it.)

Our conclusion in *Coston* that non-petitioning interested persons have no statutory right "to demand a trial, present evidence, or raise evidentiary objections in guardianship and protective placement hearings," 222 Wis. 2d at 21, would seem to undermine the ability of a non-petitioner to claim to be aggrieved by an order appointing a guardian. *See Richard D. v. Rebecca G.*, 228 Wis. 2d 658, 661–62, 599 N.W.2d 90 (Ct. App.), *review denied*, 230 Wis. 2d 276, 604 N.W.2d 573 (Wis. Oct. 26, 1999) (No. 99–0433) (concluding that "the right of foster parents to participate and present evidence in hearings" was the key factor in their being "aggrieved" and entitled to appeal an order under chapter 48). In any event, as I discuss in the text, the order which Carla attempts to appeal is not the initial order appointing a guardian for her father, but an order authorizing the guardian to terminate his rights and obligations under a lease.

with the guardian's authority to dispose of the ward's interest in a lease.

¶ 23. I conclude that Carla was not aggrieved by the order authorizing her father's guardian to terminate the life lease. Once a guardian of the estate is appointed, the management and disposition of a ward's property is largely a matter for the guardian and the court to determine. WIS. STAT. § 880.19. Interested persons, as defined in WIS. STAT. § 880.01(6),[3] may petition the court for an order directing the guardian to sell or otherwise dispose of property of a ward, may complain to the court of suspected fraud or mismanagement of a ward's estate, and may request the court to require a guardian to file accounts. *See* WIS. STAT. §§ 880.19(5)(b); 880.16(4); 880.252; *Coston,* 222 Wis. 2d at 12 n.8. When a guardian seeks the court's authority to dispose of a ward's interest in real estate, however, "interested persons" like Carla need not even be given notice of the request. Section 880.19(5)(b) ("The court, on the application of the guardian of the estate . . . after such notice if any, as the court directs, may authorize the guardian to sell . . . any property of the guardianship estate upon such terms as the court may order."); WIS. STAT. § 786.09 ("Upon the presentation of [a petition for sale or encumbrance] . . . the presiding judge may proceed in a summary manner to inquire into the merits of such application . . . .").

---

[3] As I have noted, Carla is an "interested person" under WIS. STAT. § 880.01(6), in that she is the daughter of a person "protected under" chapter 880. She is *not,* however, a "person in any way interested in the real estate," *see* WIS. STAT. § 786.01, because she, unlike Carl's other children and one of his grandchildren, possessed no legal or equitable interest in the real estate that was subject to the lease in question.

¶ 24. In view of Carla's lack of a statutory right to participate in (or even to have notice of) the proceedings regarding the disposition of Carl's leasehold interest, I conclude that Carla has not shown that the appealed order "bear[s] directly and injuriously upon" a legally protected interest of hers, or "adversely affec[ts]" her in "some appreciable manner." *Tierney v. Lacenski*, 114 Wis. 2d 298, 302, 338 N.W.2d 522 (Ct. App. 1983). Indeed, the issues she has attempted to raise in her brief relate to alleged violations of Carl's rights and interests—not hers. But Carl's rights and interests with respect to the subject matter of the instant proceedings are not hers to raise. As we noted in *Coston*, 222 Wis. 2d at 22, Carla has other avenues to pursue what she believes to be her father's best interests, for example, by seeking court review of his placement and of his competency status. Additionally, she may complain to the court regarding the guardian's management of her father's estate, and seek his removal.[4]

¶ 25. Carla argues in her reply brief that the guardian waived the issue of her standing in the trial

[4] In addition to objecting to the guardian's request to terminate the life lease, Carla also filed a petition for a "re-hearing" on whether Carl should continue to be subject to a guardianship and protective placement, for the appointment of adversary counsel for Carl, and for the removal of his present guardian. The appealed order addresses none of these matters, and the record does not disclose what action, if any, has been taken on Carla's petitions. My conclusion that Carla lacks standing is limited to her attempted appeal of the order authorizing the guardian to terminate the ward's lease-hold interest in his former residence. The question of the standing of "interested persons" to appeal other orders that may be entered in proceedings under chapters 880 and 55 is not presented by this appeal.

court. I first observe that a person's standing to appeal a circuit court order is a matter to be decided by this court, and I fail to see how any action or omission of a party in the circuit court could be deemed to foreclose our consideration of who has standing to appear before us. Moreover, I conclude that Carla's waiver argument mischaracterizes the record. She cites the following statement by counsel for the guardian: "[S]he is the daughter of the ward, so I suppose ostensibly there could be standing. . . ." The guardian's counsel, however, went on to say:

> That would be the only way that I would see her as a person with any standing on this—this limited issue.
> Conversely, I see there could be an interpretation where she doesn't have standing by virtue of the fact she's not a party to the lease agreement at all, and it's hard for me to understand how if the lease is terminated she would be impacted in any event. She certainly doesn't benefit by virtue of having the lease. If it's terminated I don't see how that's a detriment to her. And in that sense, I don't know how she would be impacted and I think that could be considered in determining standing also.

And later, counsel told the court, correctly:

> I think 880 makes it pretty clear that the court has discretion on matters of transfer of real property interest of the ward to basically give notice to whomever the court directs. . . . I think it's within the court's discretion to make that determination solely in your discretion as to whether [Carla] has any rights in this hearing or not.

In short, the issue of Carla's standing to appeal the present order has not been waived.

¶ 26. Because I conclude Carla lacks standing to appeal the instant order, I would dismiss the appeal. My recommended disposition would thus terminate the appeal before reaching the merits of any issue Carla attempts to raise, and I will not discuss those issues in this dissent. I note, however, that the majority's rationale for reversing and remanding finds little support in the record. First, Carla never testified that she believed the residence should be rented out, or that it profitably could be. She never cross-examined the guardian regarding the suitability of the property in question as a rental, or the possibility that a sub-tenant could be found who would pay rent sufficient to exceed Carl's obligations under the lease. Finally, she never argued to the court that it should require the guardian to attempt to obtain a renter or purchaser for the property, or that the disposition constituted a "gift," as the majority concludes.[5] Her sole argument in the trial court for not terminating the lease was premised on the possibility of Carl's re-occupying the home. *See State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995) ("We will not . . . blindside

---

[5] Given that there is nothing in the record to support the majority's theory that Carl's life interest in the property could be sold or profitably subleased, it is perhaps understandable that the majority relies heavily on conjecture. (See ¶ 12, "Common sense tells us . . . ."; "Tenants almost always . . . ."; ¶ 13, n.5, "As a general proposition, there would be few people who would agree . . . .") I submit that it would be at least as reasonable, if not more so, to assume that prospective purchasers or subtenants for a leasehold interest that is coterminous with the life of an infirm ninety-year-old would be few and far between.

trial courts with reversals based on theories which did not originate in their forum.").