In the MATTER OF the GUARDIANSHIP AND PROTECTIVE PLACEMENT OF MURIEL K., alleged incompetent:

Jeffrey KNIGHT and Norris Knight, Appellants,†

v.

MILWAUKEE COUNTY and Muriel K., Respondents.

· Court of Appeals

*No. 00–0929. Submitted on briefs May 1, 2001.—Decided May 30, 2001.*

## 2001 WI App 147

(Also reported in 633 N.W.2d 222.)

†Petition to review granted.

On behalf of the appellants, the cause was submitted on the briefs of *Patricia M. Cavey* of *Tammi, Cohn & Cavey*, Milwaukee.

On behalf of the respondent, Milwaukee County, the cause was submitted on the brief of *Mary Ellen Poulos,* principal assistant corporation counsel of Milwaukee.

On behalf of the respondent-guardian, Steven C. Underwood, the cause was submitted on the brief of *David W. Runke* of *Michael Best & Friedrich, LLP*, Milwaukee.

On behalf of Muriel K.'s adversary counsel, the cause was submitted on the brief of *Robert B. Peregrine* of *Peregrine & Roth, S.C.*, Milwaukee and guardian ad litem, *Pamela D. Crawford*, Franklin.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. FINE, J. Jeffrey and Norris Knight appeal from orders entered by the trial court appointing a guardian of both the estate and the person of Muriel K., and directing her protective placement in an unlocked unit of a nursing home. The Knights (Jeffrey is Norris's

son) are not related to Muriel K. Rather, they had previously been designated by Muriel K. as her power-of-attorney agents—for financial matters (Jeffrey Knight) and for health-care matters (both Knights). The following from the Knights' notice of appeal explains its basis and circumscribes its scope:

> Jeffrey Knight and Norris Knight, as interested persons, as petitioners to restore Muriel K.'s legal rights and as the persons designated by . . . Muriel K. to be her power of attorney agents . . . appeal . . . from the final order . . . ordering guardianship against Muriel K. and ordering her to be protectively placed to a nursing home and the order . . . awarding costs and fees against Muriel K.

For the reasons explained below, we conclude that the Knights may not appeal from the orders. Accordingly, we dismiss the appeal.

## I.

¶ 2. In early November of 1999, Chris Krizek, a case manager for the Milwaukee County Adult Services Division, filed a petition with the circuit court alleging that three days earlier she had checked on Muriel K. at Muriel K.'s home after the Division received what the petition describes as an "elder abuse referral" and found her to be "unresponsive" to either "verbal or physical stimuli." The petition related that Krizek returned the next day with a psychologist, and that they found Muriel K. "sitting up in a chair but was unable to keep her eyes open." The petition further alleged that on this second visit:

> [Muriel K.] could say her name after several promptings, did not know where she was, and fell asleep. When asked by [the psychologist] why they

had not sought medical intervention and taken her to the hospital, the response of the Knights was that they thought it was just her age. [Krizek] immediately summoned paramedics, who took her to Froedtert [hospital], where she remains.

The petition also alleged:

As recently as this past June [Muriel K.] was reported in good condition by her relatives. Then her longtime groundskeeper, Jeff Knight, began to take over her affairs without consulting the family members. Shortly thereafter his mother and father, Jeanne and Norris Knight [address deleted] began to assume de facto decision-making power for [Muriel K.].

In June of 1999, Muriel K. executed a Durable Power of Attorney under WIS. STAT. § 243.07 granting Jeffrey Knight the power, among other things:

To do and perform all and every act, deed, matter, and thing whatsoever in and about my estate, property and affairs as fully and effectually to all intents and purposes as I might or could do in my own proper person, if personally present, the specifically enumerated powers described in this power of attorney being in aid and exemplification of the full, complete, and general power granted and not in limitation or definition.

The document expressly provided that the person granted the durable power of attorney "shall not exercise this power in favor of" that person, that person's estate or creditors, or the creditors of that person's estate. It indicated that the powers granted by it "shall not be affected by my subsequent disability or incapacity." (Underlining omitted.) This latter language made

the document by statute the grant of a "durable" power of attorney. WIS. STAT. § 243.07(1).

¶ 3. Although a durable power of attorney under WIS. STAT. § 243.07 survives the incapacity of the principal, it may, of course, be revoked by either the principal if he or she is not incapacitated, or a court-appointed fiduciary for the principal. WIS. STAT. § 243.07(3)(a) (court appointed fiduciary "has the same power to revoke or amend the [durable] power of attorney that the principal would have had if the principal were not disabled or incapacitated."); *see also* WIS. STAT. § 243.07(5) (recognizing "express revocation" by principal). Thus, the person given a durable power of attorney on behalf of a principal is subject to direction of a guardian of the principal's estate who is appointed by "a court of the principal's domicile," and, "[u]nless the court finds that the durable power of attorney should remain in effect, the fiduciary [that is, in this context, the guardian of the estate] has the same power to revoke or amend the power of attorney that the principal would have had if the principal were not disabled or incapacitated." WIS. STAT. § 243.07(3)(a). The word "incapacity" is defined by the statute as "the inability to receive and evaluate information effectively or to communicate decisions to such an extent that the individual lacks the capacity to manage his or her decisions." § 243.07(1)(b).

¶ 4. In late September of 1999, Muriel K. granted to both Norris and Jeffrey Knight a power of attorney for health care, under WIS. STAT. ch. 155. A power of attorney for health care is subject to invalidation if the person granting the power becomes incompetent and the court appoints a guardian for that person. WISCONSIN STAT. § 155.60(1) & (2) provide:

**(1)** Nothing in this chapter prohibits an individual from petitioning a court under ch. 880 for a determination of incompetency and for appointment of a guardian for an individual who is a principal under this chapter.

**(2)** If a court under s. 880.33 determines that an individual who is a principal is incompetent or makes a finding of limited incompetency under s. 880.33(3) and appoints a guardian for the individual, the power of attorney for health care executed under this chapter by the principal is revoked and the power of attorney for health care instrument is invalid, unless the court finds that the power of attorney for health care and power of attorney for health care instrument should remain in effect. If the court makes this finding, the guardian for the individual may not make health care decisions for the ward that may be made by the health care agent, unless the guardian is the health care agent.

¶ 5. Krizek's petition for guardianship alleged that Muriel K. lived in a home "believed to be valued at in excess of $175,000," and that her "personal property, in the form of bank accounts and brokerage accounts, is valued at $1.5 million." It also alleged that following execution of powers of attorney, the Knights "attempted thereafter to transfer $100,000 from one of [Muriel K.]'s brokerage accounts at [company name omitted] brokerage to an account under the control of the Knights acting under the financial [power of attorney]."

¶ 6. Pamela D. Crawford, an attorney admitted to practice in Wisconsin, was appointed by the circuit court to be Muriel K.'s guardian *ad litem*.[1] Robert B.

---

[1] The guardian *ad litem* is an attorney admitted to practice in Wisconsin whose obligation is to "be an advocate for the best interests of the proposed ward or alleged incompetent as to

697

Peregrine, also an attorney admitted to practice in Wisconsin, was appointed to represent Muriel K. as her "adversary" or, differently phrased, her "advocacy" counsel.[2] The circuit court also appointed temporary guardians of Muriel K.'s person and estate, and "suspended all prior powers of attorney executed by [Muriel K.] for any purpose."

¶ 7. The Knights, seeing the petition for guardianship and the *ex parte* orders appointing the temporary guardians, the guardian *ad litem*, and counsel for Muriel K., as circumventing their authority under the powers of attorney previously granted to them by Muriel K., filed an appearance as, in their words, "interested persons," and sought, among other relief, the restoration of their respective authorities under the powers of attorney.[3] Additionally, the lawyer

guardianship, protective placement and protective services." WIS. STAT. § 88.331(2) & (3).

[2] The alleged incompetent is also entitled to counsel. WIS. STAT. § 880.33(2). Counsel, whether denominated "adversary counsel" or "advocacy counsel," is duty bound to represent his or her client's wishes unless, of course, there is either a conflict with the precepts of professional ethics that govern our profession, *see* RULES OF PROFESSIONAL CONDUCT FOR ATTORNEYS, SCR ch. 20, or the lawyer "concludes that he or she cannot conscientiously advocate." *Tamara L.P. v. County of Dane*, 177 Wis. 2d 770, 782–783, 783 n.4, & 784, 503 N.W.2d 333, 337, 337 n.4, & 338 (Ct. App. 1993). Stated another way, the lawyer representing the alleged incompetent must represent what that person wants "zealously within the bounds of the law." *State ex rel. Memmel v. Mundy*, 75 Wis. 2d 276, 283–284, 249 N.W.2d 573, 577 (1977).

[3] An "interested person" is defined by WIS. STAT. § 880.01(6) as, among others, "any adult relative or friend of a person to be protected under this subchapter." As we have previously recognized, "interested persons" have significant roles under WIS.

who had drafted the powers of attorney executed by Muriel K. filed an affidavit with the circuit court requesting that the court "advise" him "as to his role" in connection with the ongoing proceedings. The lawyer's affidavit was filed on February 10, 2000; on February 15, the circuit court appointed Peregrine as Muriel K.'s lawyer for purposes of the guardianship proceedings.

¶ 8. On March 6, 2000, the trial court held an evidentiary hearing on Krizek's petition. Although it did not permit the Knights to participate in the examination of the witness called by Milwaukee County in support of the petition, the trial court did authorize them to have a physician examine Muriel K. and their lawyer to call that physician to testify. (*See* footnote 3 of this opinion in connection with the trial court's limitation of the Knights' participation in the hearing.) The trial court excused Muriel K.'s attendance at the hearing, accepting the written and oral report by the guardian *ad litem,* who determined after speaking with her that Muriel K. was "confused and disoriented and would be distressed by the proceedings." *See* WIS. STAT.

STAT. ch. 880, including the filing of "a petition with the court requesting a restoration" of certain legal rights to those persons found to be suffering from "limited incompetency" (WIS. STAT. § 880.33(3)). *Coston v. Joseph P.*, 222 Wis. 2d 1, 11–13, 11 n.7, 586 N.W.2d 52, 57 & 57 n.7 (Ct. App. 1998). "Neither the guardianship statutes nor the case law, however, provides interested persons with unlimited rights to participate in the hearing" in connection with incompetency issues under WIS. STAT. ch. 880. *Id.*, 222 Wis. 2d at 12–13, 586 N.W.2d at 57–58. "No statute provides for interested persons to demand a trial, present evidence, or raise evidentiary objections in guardianship and protective placement hearings—whether contested or uncontested." *Id.*, 222 Wis. 2d at 21, 586 N.W.2d 61 (trial court has discretion, however, "to allow interested persons to participate to the extent it would deem appropriate").

§ 880.08(1) ("The court shall cause the proposed incompetent, if able to attend, to be produced at the hearing. The proposed incompetent is presumed able to attend unless, after a personal interview, the guardian ad litem certifies in writing to the court the specific reasons why the person is unable to attend.").

¶ 9. Other than the physician who examined Muriel K. on the Knights' behalf, the only person to testify at the hearing was Krizek. She told the trial court that when she went to check up on Muriel K. in early November, 1999, Muriel K. was "basically comatose," "extremely thin," and that she "appeared dehydrated." A person whom Krizek described as Muriel K.'s "caregiver" was unable to tell Krizek when Muriel K. had last eaten or drank. Krizek returned the next day with a psychologist. Again, according to Krizek, Muriel K. was in extremely poor health. Krizek testified that she summoned paramedics, who then removed Muriel K. to the hospital.

¶ 10. The physician who examined Muriel K. on behalf of the Knights testified that when he saw Muriel K. on Friday, March 3, 2000, (three days before the hearing date of March 6, 2000), she was "alert," "had no problems understanding the questions" he put to her, and "responded very appropriately." He also indicated that Muriel K. had a "mild cognitive impairment" and that her "largest area of deficit is in visual spatial functioning." Although the psychologist who had examined Muriel K. on behalf of Milwaukee County did not testify, Muriel K.'s guardian *ad litem* and advocacy counsel stipulated to the receipt of the psychologist's report and to its consideration by the trial court. The report reflects an evaluation date of December 10, 1999, and indicated that, in the psychologist's view, Muriel K. "exhibited a marginal contact with reality,

primarily compromised by the dementia," and that "she does not have any level of reasoning, judgment, or mental capacity to provide adequate direction for the management of her financial affairs." He concluded that Muriel K. was "severely incapacitated cognitively," "requires 24 hour medical supervision due to her severe needs," and "is unable to direct her affairs either with regard to personal matters, health care, or her estate."

¶ 11. After hearing Krizek's testimony, the testimony of the physician who examined Muriel K. on behalf of the Knights, considering the psychologist's report, and after hearing extensive argument from the lawyers and the recommendations by the guardian *ad litem*, the trial court ordered that the powers of attorney granted to the Knights be revoked, and appointed guardians of Muriel K.'s person and estate. Additionally, it awarded to the advocacy counsel and to the guardian *ad litem* their fees from Muriel K.'s estate. As noted, the Knights are attempting to appeal from these orders.

## II.

¶ 12. The issue of whether the Knights have standing to bring and maintain this appeal was initially decided by this district's motions judge in response to a motion brought by Muriel K.'s advocacy counsel and by her guardian *ad litem* to dismiss the appeal. The motions judge denied the motion. Before getting to the merits of whether the Knights have standing to maintain this appeal, we discuss the effect of the motions judge's denial of the motion brought by Muriel K.'s guardian *ad litem* and advocacy counsel to dismiss this appeal.

¶ 13. A. Under this court's internal operating procedures, motions are considered and decided by the motions judge—but the motions judge does not have the authority to prevent the panel from considering the merits of an appeal. Thus, Rule VI(3)(c) of the Internal Operating Procedures provides, as material here:

> The motions judge may act on all motions, except those that reach the merits or preclude the merits from being reached, which can only be acted on by the panel. The motions judge may direct that any motion be acted on by the panel. The panel considers motions that reach the merits, that preclude the merits from being reached, or that have been referred by the motions judge.

WIS. CT. APP. IOP VI(3)(c) (October 1, 2000). As noted, the motions judge issued an order denying the motion to dismiss the appeal brought by the Knights. The order recited, as material here:

> Peregrine and Crawford move this court to dismiss the appeal. The motion to dismiss is confined to arguing than an appeal on behalf of an incompetent person may be taken only by the guardian of the incompetent's estate or by the guardian *ad litem* under WIS. STAT. § 879.27(4) (1997–98). If Peregrine's and Crawford's contention is correct, Jeffrey Knight and Norris Knight would lack standing to appeal and this court would, therefore, lack jurisdiction over their appeal.

After discussing the effect of WIS. STAT. § 879.27(1), which provides that "[a]ny person aggrieved by any appealable order or judgment of the court assigned to exercise probate jurisdiction may appeal or take a writ of error therefrom to the court of appeals," the motions judge: 1) opined that the Knights had "standing to

appeal the circuit court's order and that, therefore, this court has jurisdiction of the appeal,"; and 2) "decline[d] to address the impact of WIS. STAT. § 879.27(4), at this preliminary stage of the appeal."

¶ 14. The motions judge's order was, *per force*, preliminary because a decision agreeing with the positions of Muriel K.'s advocacy counsel and of her guardian *ad litem* would have, as noted, required consideration by a three-judge panel of this court. Moreover, a three-judge panel of this court assigned to hear an appeal is not bound by a decision of the motions judge, any more than a three-judge panel deciding an appeal is foreclosed from, either on its own motion or in response to a party's suggestion, reconsidering that decision. *See* WIS. CT. APP. IOP VI(6) (October 1, 2000). We now turn to the merits of the contention that the Knights lack standing to bring and maintain this appeal.

¶ 15. B. As we have seen, appeals of probate-court matters as material here are governed by WIS. STAT. § 879.27(1) & (4). Subsection (1) provides: "APPEAL IS TO THE COURT OF APPEALS. Any person aggrieved by any appealable order or judgment of the court assigned to exercise probate jurisdiction may appeal or take a writ of error therefrom to the court of appeals." Subsection (4), however, restricts subsection (1)'s seeming broad grant of standing in two types of cases heard by the probate court—those involving minors and incompetents: "WHO MAY APPEAL ON BEHALF OF MINOR OR INCOMPETENT. In all cases the appeal on behalf of any minor or incompetent person may be taken and prosecuted by the guardian of the minor's or incompetent's estate or by a guardian ad litem."

¶ 16. Whether the Knights have standing to maintain this appeal turns on the meaning of WIS. STAT. § 879.27(1) & (4). Interpretation of statutes presents legal issues that we resolve *de novo*. *Coston v. Joseph P.*, 222 Wis. 2d 1, 10, 586 N.W.2d 52, 56 (Ct. App. 1998). Our goal is, of course, "to effectuate the intent of the legislature." *Id.*, 222 Wis. 2d at 11, 586 N.W.2d at 57.

¶ 17. Probate-court jurisdiction in Wisconsin encompasses many areas of the law. One area, of course, concerns the transfer of property at death—by will, intestate succession, or otherwise. *See* WIS. STAT. chs. 851–878. Probate courts are also invested with authority to decide petitions for guardianship. *See* WIS. STAT. ch. 880. The general procedure for matters heard by the probate court is set out in WIS. STAT. ch. 879. Thus, the general rule that any person "aggrieved" by an otherwise appealable order of the probate court may appeal. WIS. STAT. § 879.27(1). As we have seen, however, this general rule is restricted by WIS. STAT. § 879.27(4), which applies only to one area of the probate-court jurisdiction—that involving minors or incompetents, both of whom are under a disability and need a surrogate to prosecute the appeal on their behalf.

¶ 18. The restrictive nature of the grants in WIS. STAT. § 879.27(1) & (4) of the right to appeal on behalf of a person adjudged to be incompetent is illumined by our caselaw in two major respects. First, who is an "aggrieved" person for the purpose of taking an appeal from a probate court order affecting an incompetent person. Second, who may represent an incompetent person on an appeal from an order of the probate court. We discuss these matters in turn.

¶ 19. 1. Only a person whose rights are directly affected by a probate court order in connection with guardianship matters is "aggrieved" by that order. Thus, *Sanborn v. Carpenter*, 140 Wis. 572, 123 N.W. 144 (1909), dismissed the appeal of siblings who had petitioned unsuccessfully for an order declaring their sister to be incompetent and appointing a guardian to conserve her property. Holding that they were not "aggrieved" from the order denying their petition, and thus could not appeal under a statute that permitted appeals by any "person aggrieved" from the order, *Sanborn* stated the general rule:

> While section 3976, Stats. (1898), permits any relative or mere friend to awaken the activities of the county court in the first instance [to seek a declaration of incompetency], the right to appeal is limited to certain specified official persons and to "any person aggrieved" by the determination which that court may make. Sec. 4031, Stats. (1898). This phrase of the statute has from the earliest days been construed to the effect that no one can be aggrieved, in the sense of the statute, unless the determination affects adversely his legal rights; that mere affront to desire or sentimental interest is insufficient.

*Id.*, 140 Wis. at 574, 123 N.W. at 144. Similarly, as a *recipient* of the grant of a durable power of attorney, Jeffrey Knight has no personal legal rights in the grant—the power to create, and once created to undo, rests in the principal while that principal is competent. Moreover, as we have seen, if the principal is no longer competent, the guardian of the principal's estate may also revoke a durable power of attorney. WIS. STAT. § 243.07(3)(a). By the same token, the power of attor-

ney for health care may be revoked by the principal while he or she is competent, and *is* revoked by a court's determination that the person granting the power is incompetent and the court's appointment of a guardian for that person, unless the court lets it remain in effect. WIS. STAT. § 155.60(2). Additionally, the exercise of both the durable power of attorney and the health-care power of attorney is for the benefit of the principal and not those who are appointed to exercise those powers on the principal's behalf. In fact, the Knights recognized that they were asserting no *personal* rights by their seeking to participate in the guardianship proceedings when their attorney told the trial court: "We are not here for the rights of the Knights or any of their personal interest." Under *Sanborn*, they are thus not "aggrieved," and do not fall within the general grant of the right to appeal in WIS. STAT. § 879.27(1).[4]

---

[4] The Knights cite to us the statement in *Bryn v. Thompson*, 21 Wis. 2d 24, 29, 123 N.W.2d 505, 508 (1963), that "*In addition to a direct appeal of the initial order*, any interested party at any time during the guardianship may petition for a rehearing seeking revocation of the guardian-ward status." (Emphasis added.) They argue that the italicized portion of the quotation is at odds with *Sanborn v. Carpenter*, 140 Wis. 572, 123 N.W. 144 (1909), and is therefore controlling. We disagree. The issue in *Bryn* was whether a personal representative of the estate of a deceased incompetent could collaterally challenge the guardianship. *Bryn*, 21 Wis. 2d at 27, 123 N.W.2d at 507. *Bryn* held that he could not. *Id.*, 21 Wis. 2d at 29–30, 123 N.W.2d at 508. The italicized portion of the quote is in the discussion of potential other avenues of review of an alleged inappropriate guardianship. *Bryn* neither discussed nor analyzed the statutes authorizing appeal, and did not even cite *Sanborn*. Under these circumstance, the quoted statement is *dictum*, which is not binding on us. *See State v. Koput*, 142 Wis. 2d 370, 386 n.12, 418 N.W.2d 804, 811 n.12 (1988); *Miller v. Mauston School Dist.*,

¶ 20. 2. There are circumstances where minors would be "aggrieved" by an order of the probate court that affects them. Incompetents might also be "aggrieved" by a probate-court order. But both minors and incompetents are under a disability and their rights have to be asserted by others. It is here where WIS. STAT. § 879.27(4) kicks in; the section grants the right to pursue an appeal on behalf of a minor or an incompetent to two classes of persons: the guardian of the estate of the minor or incompetent, and the guardian *ad litem*. This right to appeal on their behalf is *exclusive. In re McLaughlin*, 101 Wis. 672, 673, 78 N.W. 144 (1899).

¶ 21. *McLaughlin* concerned an uncle's petition to remove the mother of minor children as their guardian (he was the brother of the children's father) because of alleged misconduct and waste. *Id.*, 101 Wis. at 673–674, 78 N.W. at 144. When the trial court denied his petition, he sought to appeal on the children's behalf. *Ibid.* The relevant statute governing who could represent minors in an appeal on their behalf was similar to current WIS. STAT. § 879.27(4) and provided that "the appeal of any minor may be taken in and prosecuted in the name of the general guardian of such minor or by a guardian *ad litem* appointed for that purpose." *Ibid. McLaughlin* explained why the legislature vested exclusive rights in either the general

---

222 Wis. 2d 540, 554, 588 N.W.2d 305, 311 (Ct. App. 1998) ("If a statement is obiter dictum—that is, irrelevant to the rationale of the decision—it is not binding unless the statement is an administrative or supervisory direction, which we are bound to follow."). The statement in *Sanborn*, on the other hand, is essential to its holding and, therefore, is not *dictum* and *is* binding on us.

guardian or the guardian *ad litem* to appeal on the behalf of minors, and this analysis is as true today as it was then:

> No reason appears to us why this court should enlarge or diminish this statute. It must be deemed exclusive. While the duty is not upon this court to find reasons for plain legislation, we may remark that it is of primary importance that the proceedings of county courts, with the important property interests placed in their care, should not be interrupted by unwarranted appeals, nor the rights of minors therein jeopardized, and their estates burdened with expense, at the discretion of people having no authority to represent them, and who in many cases may be antagonistic to their interests. Compliance with the statute is easy, and no doubt can be entertained that at any time county courts will certify to the qualifications of some proper person to care for the minors' interests, by conferring upon him an appointment as guardian ad litem when the occasion demands. Without such certification he is a mere volunteer, and the presumption is adverse to, rather than in favor of, his suitability to care for the minors' interests.

*Id.*, 101 Wis. at 674, 78 N.W. at 144–145.[5] Although the Knights hone in on the word "may," (which is in current

---

[5] In their argument in opposition to the motion to dismiss, the Knights disparage both *Sanborn* and *In re McLaughlin*, 101 Wis. 672, 78 N.W. 144 (1899), as "two roughly 100 year old decisions." Our civilization and our nation is built on the paths explored by our ancestors, and, for example, the entire basis of judicial authority to review the constitutionality of legislative enactments rests on *Marbury v. Madison*, 1 Cranch 137 (1803), which is "roughly" two-hundred years old. To paraphrase Isaac Newton, if we see further it is because we stand on the shoulders of giants. (The phrase was apparently first used by him in a

§ 879.27(4) and was in the statute applied by *McLaughlin*) and argue that it is permissive and not a restrictive grant of the right to appeal, this reading ignores the grammatical context: by saying that certain designated persons selected from a more general population "may" do something necessarily denotes that the others may not. Thus, the sentence "Every student wearing red may stand" is a directive that permits only those students wearing red to stand, and not, as the Knights would apparently have it, general license to all the students to stand, including those wearing red.

¶ 22. As we have seen in footnote 3, and in our *Coston* decision, WIS. STAT. ch. 880 grants to "interested persons" certain but limited roles in guardianship proceedings; the right to appeal either to assert their own interests or on behalf of a minor or incompetent, however, is not one. Had the legislature wanted to give either "interested persons" or the recipients of powers of attorney the right to appeal from probate-court orders or judgments "on behalf" of either minors or incompetents it could have done so quite easily. *See State v. Frankwick*, 229 Wis. 2d 406, 412, 599 N.W.2d 893, 896 (Ct. App. 1999) (legislature presumed to know existing law). It did not do so. Moreover, WIS. STAT. § 55.06(18), upon which the Knights also rely as authority for their appeal, does not apply here. Section 55.06(18) provides: "An appeal may be taken to the court of appeals from a final judgment or final order under this section . . . by any petitioner or by the representative of the public." A "petitioner" under WIS. STAT.

letter to Robert Hooke, more than three centuries ago, John Bartlett, *Familiar Quotations* 313 (15th ed. 1980), but was not original with him, Robert K. Merton, *On the Shoulders of Giants* (1965)).

ch. 55 is one who seeks to have the court order protective placement for a person. *See* WIS. STAT. § 55.06(2) ("The department, an agency, a guardian, or any interested person may petition the circuit court to provide protective placement for an individual who [statute then lists criteria].").[6] Thus, if an "interested person" files a petition seeking an order for protective placement, that petitioner may appeal from the circuit court's final order or judgment in connection with that petition. Neither of the Knights is such a petitioner. Permitting someone to gain the right to appeal by the mere filing of a petition *objecting* to a guardianship would nullify the limitations on who may appeal found in WIS. STAT. § 879.27(1) & (4), and would have the limited exception found in § 55.06(18) swallow the rule.

¶ 23. For the foregoing reasons, the Knights do not have standing to pursue this appeal, either on their own behalf or on the behalf of Muriel K. Accordingly, the appeal is dismissed.[7]

*By the Court.*—Appeal dismissed.

---

[6] An "interested person" under WIS. STAT. ch. 55 is defined as: "[A]ny adult relative or friend of a person to be protected under this subchapter; or any official or representative of a public or private agency, corporation or association concerned with the person's welfare." WIS. STAT. § 55.01(4).

[7] *Carla S. v. Frank B.*, 2001 WI App. 97, 242 Wis. 2d 605, 626 N.W.2d 330, held that an "interested person," see WIS. STAT. § 880.01(6), could appeal, but neither cited nor discussed WIS. STAT. § 879.27(4), which we apply here. Here, the Knights seek to appeal solely "on behalf" of Muriel K. Under these circumstances, § 879.27(4) controls, and the Knights lack standing.