Augusto P. SANDRONI and Colonna-Sandroni, Inc.,
Plaintiffs-Appellants,

v.

WAUKESHA COUNTY BOARD OF SUPERVISORS, Waukesha
County, United Mechanical, Inc., and Johnson Con-
trols, Inc., Defendants-Respondents.

Court of Appeals

*No. 92–1163. Submitted on briefs November 9, 1992.—Decided
December 9, 1992.*

(Also reported in — N.W.2d —.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *James W. Hammes* and *Kathryn Sawyer Gutenkunst* of Waukesha.

On behalf of the defendants-respondents, Waukesha County Board of Supervisors and Waukesha County, the cause was submitted on the brief of *Thomas P. Farley* and *Kevin P. Reak* of Waukesha.

Before Nettesheim, P.J., Brown and Snyder, JJ.

BROWN, J. Augusto P. Sandroni and Colonna-Sandroni, Inc. (collectively, CSI) appeal from a summary judgment in favor of Waukesha county and the Waukesha County Board of Supervisors (collectively, the county), United Mechanical, Inc. (United) and Johnson Controls, Inc. The issue is whether CSI had standing to sue the defendants for the costs of submitting a bid to United for use in United's bid on a jail construction project. We hold that CSI did not have standing to sue, and we adopt the Minnesota Supreme Court's reasoning in *Holman Erection Co. v. Orville E. Madsen & Sons, Inc.*, 330 N.W.2d 693 (Minn. 1983). We therefore affirm the judgment. We do not address the other issues raised by the parties because the standing issue is dispositive.

In June 1990, the county extended invitations to qualified bidders to bid on prime contracts for the construction of the new Waukesha County Jail. The instructions for bidding originally specified that Johnson Controls equipment was to be used for the temperature control equipment in the heating, ventilation and air conditioning (HVAC) portion of the contract. The county later published an addendum instructing general contractors to submit alternative bids for the HVAC portion of the contract: one bid was to use temperature control equipment manufactured by Johnson Controls, and the other was to use equipment manufactured by a company other than Johnson Controls.

CSI submitted to United a bid for the HVAC portion of the contract based on temperature control equipment manufactured by a company other than Johnson Controls. United submitted a bid to the county that showed a $28,500 deduction from the base price if the HVAC temperature control equipment was manufactured by a company other than Johnson Controls. United's bid did not specify which subcontractor pro-

vided it with the pricing for non-Johnson Controls equipment. The county subsequently awarded the contract to United based on United's bid using Johnson Controls equipment. At no time did the county solicit bids solely for the temperature control portion of the contract. The county did not receive a bid directly from CSI.

When CSI discovered that the county had accepted United's bid using Johnson Controls equipment, CSI brought an action against the county and United for declaratory and injunctive relief. Johnson Controls subsequently intervened as a defendant. The trial court granted a temporary injunction prohibiting the defendants from continuing construction of the jail, but later vacated and quashed the restraining order. All parties then moved for summary judgment.

The trial court considered the issue of "whether Waukesha County properly complied with sec[s]. 59.08 and 66.29 Wis. Stats. in awarding its contract to United Mechanical with Johnson Controls as the subcontractor." The trial court awarded summary judgment to the defendants based on *Automatic Merchandising Corp. v. Nusbaum*, 60 Wis. 2d 362, 210 N.W.2d 745 (1973). Although the trial court found that the county's alternative bidding scheme and award of the contract were proper, it did not directly address the standing issue. CSI now appeals.

[1]

It is axiomatic that to have standing to sue, a party must have a personal stake in the outcome of the controversy. *City of Madison v. Town of Fitchburg*, 112 Wis. 2d 224, 228, 332 N.W.2d 782, 784 (1983). A taxpayer may have standing to challenge an illegal contract entered into by a county. *See Mueller v. Eau Claire County*, 108 Wis. 304, 311, 84 N.W. 430, 432 (1900). Furthermore, a

private citizen or individual may sue for his or her own benefit "to challenge *the violation of a public duty* when it appears that he [or she] has suffered an injury peculiar to himself [or herself] which is not sustained by the public in general." *Aqua-Tech, Inc. v. Como Lake Protection & Rehab. Dist.,* 71 Wis. 2d 541, 553, 239 N.W.2d 25, 31 (1976) (emphasis added). By waiving all arguments challenging the validity of the contract between the county and United, CSI eliminated its ability to sue as a taxpayer and is limited to arguing that it has standing as an individual in this action.

CSI urges us to confer standing upon subcontractors by adopting the rule from *Aqua-Tech* governing general contractors who submit the low bid but are not awarded the contract. Under *Aqua-Tech,* low bid general contractors may ask the court to enjoin a municipality from awarding a contract to other than the lowest bidder. *See id.* at 551–52, 239 N.W.2d at 30–31. The general contractor also may recover the cost of preparing a wrongfully rejected bid. *See id.* at 553–54, 239 N.W.2d at 31. CSI contends that adopting this rule for subcontractors would further the public policies of preventing fraud, collusion, and favoritism, and of ensuring that the public receives the best work at the most reasonable prices available.

The county responds that CSI does not have standing because it did not suffer any loss of business opportunity as a result of the county's actions. The county asserts that CSI did not submit a bid to the county, but merely made an offer to United. United was free to accept or reject that offer. The county urges us to adopt the reasoning in *Holman,* 330 N.W.2d 693 (Minn. 1983), to support its conclusion that a subcontractor cannot have standing to sue for the costs of preparing a bid that is subsequently rejected.

We agree with the county. In order to have standing, a plaintiff must show an injury that is related to its stake in the outcome of the controversy. *State v. Milashoski,* 159 Wis. 2d 99, 107, 464 N.W.2d 21, 24(Ct. App. 1990). CSI claims injury based upon the premise that United would have been obligated to contract with CSI for installation of the jail's temperature control equipment if the bid for non-Johnson Controls equipment had been accepted. This argument is based upon the broader premise that a general contractor who incorporates a subcontractor's bid into its prime bid is contractually bound to employ that subcontractor if the general obtains the prime contract. We conclude that CSI's argument is flawed. We base our conclusion on the reasoning and policies set forth in *Holman.*

In *Holman,* the plaintiff subcontractor submitted a sub-bid to the defendant general contractor for the steel erection portion of a construction contract. The defendant used the plaintiff's sub-bid in preparing its own bid for the general contract. The plaintiff was listed as a subcontractor in the general bid proposal. The defendant was awarded the contract, but contracted with a company other than the plaintiff for the steel erection portion of the project. The plaintiff sued, claiming that a binding contract was created between it and the general contractor when the general contractor used the plaintiff's sub-bid and listed the plaintiff as a subcontractor in the general bid for the project. *Holman,* 330 N.W.2d at 695.

The Minnesota Supreme Court held that the listing of a subcontractor in a general bid does not create a binding contract between a general contractor and the subcontractor. *Id.* This is true even though a subcontrac-

tor may be bound by a bid submitted to a general contractor. The court explained:

> [T]he reason a subcontractor is bound by its bid is the existence of justifiable reliance by the general on the subcontractor's price for specified work. The general makes his bid after gathering bids and evaluating a number of subcontract bids. Once the general wins the prime contract . . . he is bound to his own bid. For the subcontractor to be able to refuse to perform would subject the general to a financial detriment.
>
> In contrast, the subcontractor does not rely on the general *and suffers no detriment. . ..* The time and expense involved in preparing the bid is not segregated to any particular general. The total cost is part of the overhead of doing business. . .. The subcontractor engages in the same work and expense in preparing its bid *regardless of who wins the general contract and whether the subcontractor wins the contract on which it bid.. . .* Clearly, the promissory estoppel concept is not applicable in this situation. . .. Ample justification exists for binding the subcontractor and not binding the general. The two situations are very different.

*Id.* at 698 (emphasis added; citations omitted).

■

We conclude that the reasoning from *Holman* should be adopted in this case. When CSI submitted its bid to United, it had no guarantee that the bid would be used to prepare United's general bid. Furthermore, CSI had no guarantee that United's general bid would be accepted by the county. CSI did not rely upon any promises when preparing its bid; rather, it incurred the expenses regardless of whether its bid was listed in the general bid.

Because CSI had no reliance interest in obtaining the contract for temperature control equipment, it suffered no injury when the county chose to contract for Johnson Controls equipment. It therefore does not have standing to sue the county for the cost of preparing a bid.[1] Consequently, we affirm the trial court's summary judgment in favor of all the defendants.

*By the Court.*—Judgment affirmed.

---

[1] Because we decide that CSI does not have standing, we do not address its argument that the county violated a public duty by calling for "alternate" rather than for "alternative bids."