Sylvia A. Sʜᴏᴠᴇʀs, Plaintiff-Appellant,

v.

Gary D. Sʜᴏᴠᴇʀs, Defendant-Respondent.

Court of Appeals

*No. 2005AP706. Oral argument January 3, 2006.
—Decided April 11, 2006.*

2006 WI App 108

(Also reported in 718 N.W.2d 130.)

FINE, J., concurs.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Gary A. Ahrens* and *Jacquelyn A. Champagne* of *Michael Best & Friedrich LLP*, of Milwaukee, with oral argument by Gary A. Ahrens.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Howard A. Pollack, Michael B. Apfeld* and *William E. Duffin* of *Godfrey & Kahn, S.C.,* of Milwaukee, with oral argument by Michael B. Apfeld.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J. Sylvia A. Shovers (Sylvia) appeals the trial court's grant of summary judgment to her son Gary D. Shovers (Gary), on the ground that she lacked standing in her action seeking a declaratory judgment that her husband, Harold Shovers, died owning fifty shares of Soref's Carpet City, Inc. (Soref's). Sylvia contends that she has standing to seek declaratory relief because she has an equitable interest in the assets of her husband's estate under their joint will, and "an interest that Soref's shares be declared part of the assets of Harold's estate based on her right to elect deferred marital property." Based on the assumption that she does have standing, Sylvia contends that the competent evidence shows that Harold died owning fifty shares of Soref's, because: (1) the dead man's statute bars Gary from testifying about transactions with Harold; (2) a 1993 agreement, allegedly setting forth a transfer of the shares from Harold to Gary, by itself, is insufficient; and (3) Gary never paid Harold the consideration cited in the 1993 agreement. As a result, Sylvia asks this court to reverse the trial court's order dismissing her claim and award her summary judgment.

¶ 2. Because we conclude that the trial court did not err in concluding that Sylvia lacked standing, we do not address Sylvia's remaining arguments and affirm the·grant of summary judgment to Gary.

## I. BACKGROUND.

¶ 3. Harold died on September 1, 2001. At the time of his death, Harold had been married to Sylvia for more than fifty years. They had three children: Gary, Judith and Bradley Shovers.

¶ 4. In 1963, Harold and Al Soref founded Soref's Carpet City, Inc. Harold and Al each paid $9,000 for fifty of the authorized 100 shares, each thus owning half of the company's shares. Harold became the president of Soref's. While in high school, Gary started working at Soref's and is the only one of Harold and Sylvia's three children who ever worked at Soref's full-time.

¶ 5. In 1975, as a result of a falling-out between Harold and Al, Harold convinced Al to sell his shares to Gary. Pursuant to an agreement, handwritten by Harold and dated December 31, 1975, Gary purchased Al's shares for $55,425. Al signed the assignment form on the reverse of his original stock certificate, and thereby officially assigned his shares to Gary. Gary became the secretary/treasurer of Soref's.

¶ 6. Harold and Gary worked together until 1984, when Harold withdrew as an official employee due to health problems, leaving Gary in charge of Soref's; however, Harold maintained an interest in the business. In 1993, Gary was gone for one week, apparently leaving Harold temporarily in charge of the business. When Gary returned, the employees at Soref's told him that problems had arisen with Harold and they threatened to quit. Gary suggested to his father, who was then seventy-five years old and suffering from multiple health problems, that he retire from the business and allow Gary to buy him out.

¶ 7. According to Gary, the discussion resulted in a written agreement for the sale of Harold's fifty shares of Soref's stock to Gary. The agreement is dated May 6, 1993, signed by Harold and notarized by Attorney J. Patrick Ronan.[1] The agreement provides in relevant part:

> I, HAROLD J. SHOVERS, . . . hereby sell my fifty (50) shares of SOREF'S CARPET CITY, INC. stock to my son, GARY D. SHOVERS . . . for and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, already granted to BRADLEY T. SHOVERS and JUDITH SHOVERS adequately providing for each of them financially.[2]
>
> After completion of this agreement, GARY D. SHOVERS will own one hundred (100) shares of SOREF['S] CARPET CITY, INC. stock. As a result, GARY D. SHOVERS will be the One Hundred percent (100%) owner of SOREF'S CARPET CITY, INC.
>
> This Agreement takes effect immediately upon the date the agreement is executed by HAROLD J. SHOVERS.

(Footnote added.)

---

[1] Attorney Ronan later testified that while he was unable to remember the occasion, inasmuch as it is his practice to notarize documents only when he sees the person whose signature he is notarizing sign the document in his presence, he had no doubts that Harold signed the agreement before him on May 6, 1993.

[2] Prior to May of 1993, Harold had established brokerage accounts, that he alone managed, for each of his three children. At the time of the alleged stock sale, the value of the securities in the respective accounts were as follows: Gary, $934,455; Judith, $1,713,447; and Bradley, $2,329,866. Gary suggests that because the agreement does not state that the consideration had to flow from Gary, the brokerage accounts in fact constitute the consideration to Bradley and Judith referred to in the agreement. Sylvia disagrees and claims Gary never paid the consideration.

¶ 8. According to Gary, he and his father further agreed that, as additional consideration, Harold would receive United States treasury bearer bonds in the amount of approximately $350,000. Gary claims the bonds were delivered to Harold in Sylvia's presence. The assignment form on the reverse of Harold's original stock certificate was not filled out, but the certificate bears a stamp that reads: "CANCELLED." A new stock certificate was apparently not issued. It appears as though Harold never came back to Soref's after May of 1993.

¶ 9. Harold, as mentioned, died on September 1, 2001. Harold and Sylvia prepared at least two joint wills, one dated September 16, 1999, and one dated October 14, 2000. The 1999 will makes specific bequests of particular securities. The 2000 will does not provide such specific bequests, but contains a residuary provision that reads, "all remaining assets of our estate go to Sylvia, or if Sylvia predeceases Harold, Sylvia's remaining assets go to Harold." Neither will contains any mention of Soref's stock. Neither will has been probated.

¶ 10. Nearly one year after her husband's death, Sylvia demanded by letter dated July 31, 2002, that she be allowed to inspect Soref's corporate records. After not receiving a response, Sylvia filed suit against Soref's on August 27, 2002, alleging that, under the residuary provision of the joint will, she "inherited all of her late husband's stock in [Soref's] and therefore is the owner, or the beneficial owner, of that stock." The complaint alleged that Sylvia was vice-president of Soref's, and that at the time of his death Harold owned all, or substantially all, of Soref's. Sylvia "demand[ed] judgment ordering defendant to allow her to inspect and

copy defendant's record of shareholders, including but not limited to, its shareholder list and its stock transfer records . . . ."

¶ 11. In a letter dated October 7, 2002, Soref's denied Sylvia's request, explaining that she had no right to inspect the records because she was not a shareholder. Soref's enclosed copies of the 1993 stock sale agreement, Harold's cancelled stock certificate, and the most recent annual report, according to which Gary was president, vice president, secretary, treasurer, and the only member of the board of directors. Soref's repeated the same position in its answer to the complaint filed February 3, 2003.

¶ 12. Apparently unaware of the 1975 and 1993 stock sale agreements, Sylvia responded by claiming that the agreements were not authentic and hired four handwriting experts to prove it. The originals of both agreements were produced and the experts were allowed to inspect them. Three of the experts withdrew after the inspection, thereby apparently conceding their authenticity, and the fourth concluded that the signatures were authentic but that the 1993 agreement was signed closer to December than May. Sylvia herself admitted that her late husband's signature on the 1993 agreement looked authentic.

¶ 13. Soref's filed a motion for summary judgment arguing that there was no longer an issue as to the authenticity of the 1993 agreement.

¶ 14. Sylvia filed a cross-motion for summary judgment, claiming that Soref's cannot rely on the 1993 agreement to establish Gary as the sole owner because no consideration was paid to Harold, and that as a residuary beneficiary of her husband's will, she has shareholder status and is entitled to inspect Soref's corporate records.

¶ 15. Soref's responded, arguing that: there is no genuine issue as to the authenticity of the 1993 agreement; whether Harold received consideration is immaterial because it could have been a gift, and even so, Harold received consideration in the form of bearer bonds; Sylvia's point is moot because she already inspected the corporate records; and Sylvia lacks standing because she is claiming that she inherited the stock under the residuary clause of a will that has yet to be probated, and grandchildren, not Sylvia, were to receive the first $675,000 of the estate's assets.

¶ 16. Sylvia filed a reply arguing, among other things, that: nothing indicates that the transfer was a gift and her marital property interest in the stock would have precluded such a gift without her consent; and she has standing under the joint will as Harold's residuary beneficiary.

¶ 17. Soon thereafter, albeit nineteen months after the original complaint, and more than a year after the deadline to amend pleadings, Sylvia filed a motion for leave to amend the complaint to join Gary as an additional party. Gary responded by arguing, among other things, that: the claim is moot because Sylvia had already received the relief she requested; and the will under which she claims ownership has not been admitted to probate.

¶ 18. On April 7, 2004, the trial court ruled that the only way the case could go forward would be through a marital property claim under WIS. STAT. § 766.70(6) (2003–04)[3] if Sylvia could show that the stock had "morphed into" marital property, that is, "if she can show that her time, skill, effort, managerial

---

[3] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

assistance [etc.] transformed this predetermination property into marital property . . . ." The court allowed the amendment, making Gary the named defendant and dismissing the case against Soref's. On May 4, 2004, the court issued an order granting Sylvia "leave to file an amended complaint adding Gary Shovers as the defendant to this action in order to assert a claim under the Marital Property Act as discussed by the Court on the record in its oral decision." The court denied the motions in all other respects.

¶ 19. Despite the order limiting her claim to the Marital Property Act, Sylvia nonetheless filed an amended complaint, demanding judgment pursuant to her residual legatee status, declaring that she is the owner of a minimum of fifty percent of the shares of Soref's stock issued to Harold in 1963 and requiring that Gary transfer those shares to her.

¶ 20. Gary filed an answer arguing, among other things, that Sylvia's declaratory judgment claim to Soref's stock, based upon her alleged ownership, was precluded by the trial court's May 4, 2004 order.

¶ 21. A hearing was held on September 27, 2004, at which Sylvia sought leave to submit a report by a new expert questioning the authorship of the 1993 agreement. Although apparently unconvinced of its relevance, the court allowed the submission of the report. On November 3, 2004, Sylvia changed her focus, however, and filed a motion in limine to bar Gary from testifying about any transaction with Harold for the transfer of Soref's stock, on grounds that Gary is not a competent witness under the dead man's statute. Wis. Stat. § 885.16.

¶ 22. Gary responded by filing a motion for summary judgment. Sylvia filed a brief in opposition to Gary's motion, arguing that she should be awarded

summary judgment instead. She again maintained that Harold died owning fifty percent of Soref's shares, and that she, as a legatee, has a claim to them, among other things, because the dead man's statute bars Gary from testifying about the 1993 agreement. In addition, she expressly noted in a footnote that she would not pursue any claims based on the Marital Property Act, despite the earlier limitation imposed by the trial court permitting only a claim under WIS. STAT. ch. 766.

¶ 23. On January 31, 2005, the court conducted a hearing on the various motions. Echoing its previous ruling that Sylvia's standing was premised upon her showing that the stock morphed into marital property, the court concluded that because she had withdrawn her marital property claim, she no longer had standing to proceed.

> Now the withdrawal of the marital property claim, in my mind, leaves her action as to him non-existent . . . .

> [T]he estate has the basis to determine whether or not the ownership of this stock is involved by it as to be part of the residual estate. Only after that is determined is there going to be an interest whereby she can proceed. The estate was not a party to this action, one could have been, could have been a special administration, could have actually had the estate processed. It wasn't. I can't recreate that. I won't.

> This is an adversarial procedure, and unfortunately or fortunately, depending on how you want to look at it, I guess, her claim that remained as of this juncture was one of a marital interest claim. Now she's withdrawn that . . . .

¶ 24. Noting that the question of whether the stock should be part of the residual estate would have to

be addressed in an action by the estate, not one by Sylvia as a "potential legatee," the court refused to make a determination as to the ownership of the stock.

> I am not going to get into determination of his owner-ship because that technically is not before me. What is before me is whether or not Mrs. [Shovers] had a claim, and she does not any longer based upon the Court's ruling and determination that there is nothing now before it as a matter of law as to her claim in this matter based on marital interests, and as far as whether or not this stock should be part of the residual estate is one that would rest with an action if appro-priate by the estate not by her as a potential legatee under the circumstances of the record now before this Court.

¶ 25. The court granted Gary's motion for sum-mary judgment, and on February 25, 2005, issued a written order to that effect. This appeal follows.

## II. ANALYSIS.

¶ 26. We review a summary judgment de novo, using the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).

¶ 27. Despite the long and complicated history of this case, the issue before us is quite narrow: whether the trial court properly concluded that Sylvia lacked standing to pursue a declaratory judgment claim after the court's previous ruling limited her standing to a marital property claim and Sylvia subsequently with-drew that claim. We conclude that it did.

¶ 28. Standing requires a personal stake in the outcome of a controversy. *City of Waukesha v. Salbashian*, 128 Wis. 2d 334, 350, 382 N.W.2d 52 (1986). The party who asserts standing must show an injury that is related to its stake in the outcome of the controversy. *Sandroni v. Waukesha County Bd. of Supervisors*, 173 Wis. 2d 183, 188, 496 N.W.2d 164 (Ct. App. 1992). "Whether a party has standing is a question of law." *Polan v. DOR*, 147 Wis. 2d 648, 658, 433 N.W.2d 640 (Ct. App. 1988).

¶ 29. Under the Uniform Declaratory Judgment Act, courts may "declare rights, status, and other legal relations whether or not further relief is or could be claimed." WIS. STAT. § 806.04(1). To obtain a declaratory judgment a "justiciable controversy" must exist, that is, there must be: (1) "[A] controversy in which a claim of right is asserted against one who has an interest in contesting it"; (2) "The controversy must be between persons whose interests are adverse"; (3) "The party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectible interest"; and (4) "The issue involved in the controversy must be ripe for judicial determination." *Loy v. Bunderson*, 107 Wis. 2d 400, 409, 320 N.W.2d 175 (1982) (citation omitted).

¶ 30. Sylvia contends that the trial court erred in declaring that she lacks standing to seek a declaratory judgment. She maintains that she has standing because she has an interest in Harold's estate, and that the court can declare that Harold died owning fifty percent of Soref's shares and that those shares are part of his estate. In so asserting, she does not, however, challenge the trial court's reasoning; rather, her argument for

standing focuses solely on two reasons for why she has an interest in the estate. She argues that, "[a]s a legatee under [their] Joint Will, Sylvia has an equitable ownership interest in the assets of Harold's estate," and that even without the joint will, she "has an interest that Soref's shares be declared part of the assets of Harold's estate based on her right to elect deferred marital property" under Wɪs. Sᴛᴀᴛ. § 851.055.

¶ 31. Gary responds that Sylvia's declaratory judgment claim is barred by the trial court's May 4, 2004 order granting her leave to amend her complaint to set forth a marital property claim only, a claim she subsequently withdrew. He also contends that despite the trial court's express order limiting her claim, Sylvia still lacks standing to litigate rights belonging to the estate because the personal representative has the exclusive right to bring actions related to assets of the estate, and "[a]t best, she has a remote and contingent interest as residuary beneficiary of Harold's yet-to-be probated will." Gary further asserts that seeking a declaratory judgment does not cure Sylvia's lack of standing because a declaratory judgment cannot give standing to a party that otherwise lacks standing. He refers to Sylvia's reliance on the Declaratory Judgment Act as "particularly problematic" because she is the only one of several beneficiaries to seek relief, even though the act requires that "all persons shall be made parties who have or claim any interest which would be affected by the declaration . . . ." Wɪs. Sᴛᴀᴛ. § 806.04(11). We agree that Sylvia has no standing.

¶ 32. To amend a complaint more than six months after it was filed, a party must obtain leave from the court to do so, Wɪs. Sᴛᴀᴛ. § 802.09(1), and

whether an amendment will be permitted is within the discretion of the trial court, *Columbia Propane, L.P. v. Wisconsin Gas Co.*, 2003 WI 38, ¶ 13, 261 Wis. 2d 70, 661 N.W.2d 776. A trial court's exercise of discretion is proper when it considers the relevant facts, applies the correct law, and provides a reasonable basis for its decision. *Id.* Absent an erroneous exercise of discretion, this court will affirm a trial court's discretionary decision. *State v. Davis*, 2001 WI 136, ¶ 28, 248 Wis. 2d 986, 637 N.W.2d 62.

¶ 33. In this case, nineteen months passed from the filing of the original complaint, and over a year passed from the deadline for amendments, before Sylvia sought leave to amend. The trial court granted Sylvia leave to amend, however, the court granted it *only* to allow her to pursue a marital property claim. The court specifically explained that the case could go forward *only if* Sylvia could prove that the shares of Soref's stock had "morphed" into marital property.

¶ 34. Sylvia did not follow the court's ruling; rather, she explicitly stated that she did not plan to pursue a marital property claim, and continued to assert that she had a claim as a legatee to half of Soref's shares. As a consequence, the trial court concluded that Sylvia had not complied with the court's May 4, 2004, order, and ultimately granted summary judgment in favor of Gary.

¶ 35. On appeal, Sylvia does not argue that the May 4, 2004 order was erroneous. In fact, she makes no mention of either the order that limited her standing to the Marital Property Act or even her own decision not to pursue such a claim. Her disregard of this seminal ruling does not diminish its importance. The trial court

properly granted summary judgment based on Sylvia's unwillingness to pursue the only claim she had been given leave to file.

¶ 36. Because Sylvia does not challenge the trial court's original order that limited her standing to a marital property claim, our analysis need not go further. However, since this ruling was the basis for summary judgment, we explain why we agree with the trial court's underlying reasoning.

¶ 37. Upon the death of a person, the title to his property remains suspended until the appointment of a personal representative, at which time it passes to that personal representative. *McKenney v. Minahan*, 119 Wis. 651, 658, 97 N.W. 489 (1903). "[T]he personal representative succeeds to the interest of the decedent in all property of the decedent."[4] WIS. STAT. § 857.01. Heirs and legatees obtain no legal title to the property, but are beneficially interested in the estate and possess an equitable title subject to administration and payment of debts. *Schoenwetter v. Schoenwetter*, 164 Wis. 131, 134, 159 N.W. 737 (1916). Title can pass to those ultimately entitled to share in the property only after administration and by the final decree of the proper court administering the estate. *Pietraszwicz v. Pietraszwicz*, 173 Wis. 523, 530, 181 N.W. 722 (1921). Therefore, if a personal representative has not yet been appointed, title is suspended and a potential legatee has

---

[4] Only if the surviving spouse has a claim under WIS. STAT. ch. 766, the Marital Property Act, may the personal representative or the spouse ask the court to determine the classification of property or other equitable relief necessary for management and control of the marital property during the administration of the estate. WIS. STAT. § 857.01. Sylvia of course expressly withdrew her marital property claim.

no authority to try to gain ownership to assets belonging to the estate or the right to bring an action relating to such assets.

¶ 38. Against this backdrop it is easy to see why Sylvia's attempt to gain ownership of shares of stock that she alleges were part of her late husband's estate is problematic. She is trying to claim ownership, under the residuary clause of her late husband's yet-to-be probated will, to assets not even expressly mentioned in that will, prior to the appointment of a personal representative. She has no authority to bring such a case.

¶ 39. As the trial court correctly concluded, the estate has the responsibility to determine whether the stock is part of the residual estate, and only thereafter would Sylvia have the opportunity to proceed. The trial court also rightly noted that while the estate could have been made part of this case through a special administration, this was not done and the estate has yet to be processed; therefore, it was not up to the trial court to recreate what was not done. It is likewise not up to this court to speculate what could or should have been done.

¶ 40. Moreover, we agree with Gary that Sylvia's attempt to assert ownership by seeking a declaratory judgment is inappropriate because she is advocating on her own without joining other potential beneficiaries as required by the Declaratory Judgment Act. In light of all of the abovementioned deficits, we see no reason to reward Sylvia for what appears to be an attempt to circumvent the probate court.

¶ 41. The trial court also correctly determined that the question of the stock ownership was not properly before it, and thus declined to address the issue. For the same reason, this court declines to make a determination as to stock ownership. Sylvia's assertions that she has an equitable interest in Harold's

estate and that she has an interest based on her right to elect deferred marital property are likewise not before us, and we decline to address them as well.

¶ 42. Because we conclude that the trial court's grant of summary judgment was proper, we do not reach the remainder of Sylvia's claims. *Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (if a decision on one point disposes of an appeal, we will not decide other issues raised). Accordingly, we affirm.

*By the Court.*—Judgment affirmed.

¶ 43. FINE, J. (*concurring*). Although I believe that Mrs. Shovers has sufficient standing under the broadly worded Uniform Declaratory Judgments Act to get a declaration in connection with the relief that she seeks (to which she may or may not be entitled), she has made no showing that the trial court erroneously exercised its discretion in refusing to permit her to further amend her complaint long after the period to amend without court-leave expired. I would affirm on that ground, and, accordingly, respectfully concur.